744 S.E.2d 566

Lawton LIMEHOUSE, Sr., Respondent,

v.

Paul H. HULSEY and The Hulsey Litigation Group, LLC, Petitioners.

Appellate Case No. 2011–196246.

and

Lawton Limehouse, Jr., Respondent,

v.

Paul H. Hulsey and The Hulsey Litigation Group, LLC, Appellants.

Appellate Case No. 2010–151573.

No. 27279.

Supreme Court of South Carolina.

Heard March 6, 2013.

Decided June 26, 2013.

94

A. Camden Lewis, Keith M. Babcock, and Ariail Elizabeth King, all of Lewis Babcock & Griffin, LLP, of Columbia; Robert H. Hood and James Bernard Hood, of Hood Law Firm, LLC, of Charleston, Deborah Harrison Sheffield, of Columbia, John K. Weedon, of Hinshaw & Culbertson LLP, of Jacksonville, FL, for Petitioners and Appellants.

Frank M. Cisa, of The Law Firm of Cisa & Dodds, LLP, of Mt. Pleasant, for Respondents.

Justice BEATTY.

Lawton Limehouse, Sr. ("Father") and Lawton Limehouse, Jr. ("Son") separately sued Paul Hulsey, an attorney, and Hulsey's law practice (collectively, "Hulsey") for defamation arising out of statements Hulsey made regarding L & L Services, LLC ("L & L"), a staffing agency owned and operated by Father and Son. Hulsey removed the case to federal court based on an underlying RICO action[1] involving the

---

1. "RICO" is an acronym for the Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C.A. §§ 1961–1968.

operation of L & L. The federal court remanded the case to state court on the ground it lacked federal question jurisdiction over the issues presented. After the remand, the state court clerk of court entered a default against Hulsey.

Following a damages hearing, a jury awarded Father $2.39 million in actual damages and $5 million in punitive damages. The Court of Appeals affirmed. *Limehouse v. Hulsey*, 397 S.C. 49, 723 S.E.2d 211 (Ct.App.2011). While the appeal in Father's case was pending, a damages hearing was held for Son's case. A jury awarded Son $1 million in actual damages and $2.6 million in punitive damages.

This Court granted Hulsey's petition for a writ of certiorari to review the opinion of the Court of Appeals. Subsequently, this Court issued an order certifying the appeal in Son's case pursuant to Rule 204(b), SCACR. Because the dispositive issue in each case is identical, we consolidated the matters for oral argument and for the purpose of this opinion.[2] As will be discussed, we find the state court proceedings are void as the lack of a certified remand order precluded the state court from resuming jurisdiction over the cases. Accordingly, we reverse the decision of the Court of Appeals, vacate the state court proceedings, and remand to the circuit court to recommence the cases from the procedural point at which the state court received a certified remand order from the federal court.

## I. Factual/Procedural History

Father and Son owned and operated an employment staffing agency known as L & L Services, LLC, which was located in Charleston County. Between February 11, 2004, and February 24, 2004, *The Post and Courier* published four articles concerning housing raids performed on homes rented by L & L and fines assessed for overcrowding, inadequate heating and plumbing, and running illegal boarding houses. On Sunday, March 21, 2004, *The Post and Courier* published a front page article entitled, "The Hidden Economy, Local company accused of trafficking in illegal immigrant labor." Several of L

---

2. *See* Rule 214, SCACR ("Where there is more than one appeal from the same order, judgment, decision or decree, or where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order the appeal to be consolidated.").

& L's employees were interviewed and quoted in the article. The employees admitted they were undocumented and accused L & L of selling them false citizenship documents and failing to pay for overtime work.

On April 23, 2004, Hulsey filed a class action lawsuit in federal court on behalf of former employees of L & L, alleging violations of the RICO Act and other state and federal laws (the "RICO case"). Hulsey named Father, Son, and L & L as defendants in the RICO case. In the Complaint, it was alleged that defendants hired undocumented workers and exploited them under the threat of deportation by failing to pay overtime wages, manufacturing and providing false identification and immigration documents and reports, and harboring them in substandard housing.[3]

On April 24, 2004, *The Post and Courier* printed an article entitled, "Lawsuit Targets Staffing Agency." The article quoted Hulsey as stating:

(1) L & L engaged in a "classic racketeering scheme";

(2) L & L's conduct set "the community back 150 years";

(3) L & L engaged in "a blatant case of indentured servitude"; and

(4) L & L "created a perfect racketeering enterprise, just like Tony Soprano."

Neither Father nor Son was mentioned by name in the article. Evidence was presented that the estimated readership for *The Post & Courier* on April 24, 2004 was 237,952.

On April 19, 2006, Father and Son, separately but with identical pleadings, initiated the current defamation action against Hulsey in state court, alleging the statements in the article were false and damaged their reputation, health, and business. Hulsey's law practice was served with a copy of the Complaint on April 20, 2006, and Hulsey was served individually on April 21, 2006. On May 5, 2006, before Hulsey's Answer was due in state court, Hulsey filed a notice of removal to federal district court. On June 2, 2006, Father and Son filed a motion to remand the cases to state court.

---

3. The RICO case was never certified as a class action and ultimately settled for $20,000.

By order dated July 19, 2006, the federal district court remanded the cases to state court on the ground that federal question jurisdiction was not present. The federal court electronically transmitted the order to counsel on July 20, 2006; however, the electronic copy was neither manually embossed nor did it contain an electronic seal. The Charleston County Clerk of Court received an uncertified copy of the remand order on July 21, 2006, which it filed the same day. On July 27, 2006, the clerk mailed notice of the filing to the parties.

On August 21, 2006, Father and Son moved for entry of default in state court on the ground Hulsey failed to timely file an Answer to the Complaint. The Charleston County Clerk of Court entered default on August 21, 2006, and filed it on August 22, 2006. The clerk mailed the Form 4 order to all parties on August 24, 2006, noticing the entry of default. On August 29, 2006, upon receipt of the Form 4 order, Hulsey filed an Answer and a motion to set aside the entry of default pursuant to Rule 55(c), SCRCP. Following a hearing, then Circuit Court Judge Daniel F. Pieper issued a written order denying the motion.

On February 4–6, 2008, Circuit Court Judge Roger M. Young presided over the damages hearing involving Father's case. Because Hulsey was deemed in default, Judge Young limited Hulsey's participation in the hearing to cross-examination and objection to Father's evidence. The jury returned a verdict against Hulsey for $2.39 million in actual damages and $5 million in punitive damages. On February 15, 2008, Hulsey filed several post-trial motions, including a motion to dismiss for lack of subject matter jurisdiction after discovering the Charleston County Clerk of Court had not received a certified copy of the remand order from the federal court. Following a hearing, Judge Young denied Hulsey's post-trial motions. Hulsey appealed to the Court of Appeals.

In a divided opinion, the Court of Appeals affirmed. *Limehouse v. Hulsey*, 397 S.C. 49, 723 S.E.2d 211 (Ct.App.2011). In so ruling, the majority held: (1) the circuit court had subject matter jurisdiction over the action upon remand as the mailing of a certified order is a procedural, rather than jurisdictional, requirement; (2) Judge Pieper properly denied

Hulsey's motion to set aside the entry of default as Hulsey's explanation for the untimely Answer did not support a finding of good cause; (3) Judge Young properly limited Hulsey's participation in the damages hearing to cross-examination and objection to Father's evidence; (4) Judge Young did not comment on the facts of the case when he responded to a question posed by the jury during deliberations; (5) Judge Young properly submitted to and instructed the jury on the issue of punitive damages; and (6) the award of punitive damages was supported by the evidence. *Id.* at 60–80, 723 S.E.2d at 217–28.

In contrast, the dissent found the circuit court was without jurisdiction over the proceeding as the federal court's failure to mail a certified copy of the remand order precluded jurisdiction from re-vesting in the state court. *Id.* at 81, 723 S.E.2d at 228–32. Alternatively, the dissent believed Judge Pieper erred in ruling on Hulsey's motion to set aside the entry of default in light of this Court's decision in *Sundown Operating Co. v. Intedge Industries, Inc.*, 383 S.C. 601, 681 S.E.2d 885 (2009). Because the dissent believed *Sundown* changed the analytical framework for ruling on "good cause," the dissent would have reversed Judge Pieper's order and remanded the case for a determination of whether good cause existed under *Sundown*. *Id.* at 89–94, 723 S.E.2d at 233–35.

This Court granted Hulsey's petition for a writ of certiorari to review the decision of the Court of Appeals.

While the appeal of Father's case was pending before the Court of Appeals, Judge Young presided over a jury trial for damages in Son's case on November 9–13, 2009.[4] Because Hulsey was deemed in default, Judge Young again limited Hulsey's participation in the hearing to cross-examination and objection to Son's evidence. The jury returned a verdict in favor of Son in the amount of $1 million actual damages and $2.6 million in punitive damages. Hulsey appealed to the Court of Appeals.

After granting the writ of certiorari to review the Court of Appeals' decision in *Limehouse v. Hulsey*, 397 S.C. 49, 723

---

4. Hulsey filed a motion to stay the trial of Son's case due to the pending appeal in Father's case. Judge Young, however, denied this motion and set the matter for a damages trial.

S.E.2d 211 (Ct.App.2011), this Court certified the appeal in Son's case pursuant to Rule 204(b), SCACR. We now consider the consolidated matters.

## II. Discussion

### A. Jurisdiction of the State Court

Hulsey asserts the circuit court was without subject matter jurisdiction over the proceedings as the federal removal statutes require the state court to receive a *certified* order for jurisdiction to be re-vested.

Section 1446(d) of the United States Code provides that after an action has been removed to federal court, "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C.A. § 1446(d) (West 2013). A remand order that is based on lack of subject matter jurisdiction is governed by section 1447(c). Section 1447(c), entitled "Procedure after removal generally," provides in relevant part:

> (c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded ... *A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.*

*Id.* § 1447(c) (emphasis added).

In ruling on this issue, a majority of the Court of Appeals focused on whether *mailing* was required to divest the federal court of jurisdiction. *Limehouse*, 397 S.C. at 60, 723 S.E.2d at 217. Although the court recognized that "a majority of federal circuits take the position that the finality of the remand and the accompanying loss of federal jurisdiction requires both entry of the order with the federal clerk of court *and* a certified copy being mailed to the state court," it adopted the minority view espoused by the Fourth Circuit Court of Appeals. *Id.* at 60, 723 S.E.2d at 217.

Relying on the reasoning of *In re Lowe*, 102 F.3d 731 (4th Cir.1996),[5] the majority of the Court of Appeals concluded that

---

5. In *Lowe*, Katherine Lowe sued her employer, "Wal–Mart Stores", and two Wal–Mart managers in North Carolina state court. *Lowe*, 102 F.3d

mailing of the certified remand order is not a jurisdictional requirement, but instead the federal court lost jurisdiction when the remand order was *entered*. *Limehouse*, 397 S.C. at 61–62, 723 S.E.2d at 217–18.

In analyzing whether jurisdiction re-vested in the state court upon mailing of the remand order to the clerk, the majority noted the state court's jurisdiction is general as it is derived exclusively from our state constitution and not federal law. *Id.* at 62, 723 S.E.2d at 218. The majority proceeded to compare the general jurisdiction of the state court to the limited jurisdiction of the federal court and found the state court's jurisdiction is limited only by the federal court's proper exercise of jurisdiction over a case pursuant to a congressional act, "which according to Fourth Circuit jurisprudence in *Lowe*, ceased upon entry of the remand order." *Id.* at 63, 723 S.E.2d at 218.

---

at 732. After Wal–Mart removed the case to federal court, Lowe moved to remand the case to state court based on a lack of diversity jurisdiction. *Id.* at 733. The remand order was entered on the district court docket on August 25, 1995. *Id.* The federal court mailed a copy of the order to the state court. However, the state court's copy of the remand order lacked the blue backing necessary to show the order was certified. *Id.* Wal–Mart moved before the federal court for reconsideration of its remand order. *Id.* Ultimately, the federal court reinstated the case to the federal docket. *Id.* Lowe filed a petition for a writ of mandamus in the Fourth Circuit Court of Appeals asking the court to order the district court to return her case to the state court. *Id.* In analyzing whether the district court had jurisdiction when it reconsidered the remand order, the Fourth Circuit was required to determine the point at which the district court lost jurisdiction over the case. *Id.* at 734. Lowe claimed the district court lost jurisdiction when it entered the remand order. In contrast, Wal–Mart asserted the district court retained jurisdiction until it mailed a certified copy of the remand order to the state court. *Id.* The Fourth Circuit ruled in favor of Lowe. In so ruling, the court found that " '[l]ogic ... indicates that it should be the action of a court (entering an order of remand) rather than the action of a clerk (mailing a certified copy of the order) that should determine the vesting of jurisdiction.' " *Id.* at 735 (quoting *Van Ryn v. Korean Air Lines*, 640 F.Supp. 284, 285 (C.D.Cal.1985)). The court stated that to "hold otherwise would impermissibly elevate substance over form." *Id.*

Our Court of Appeals also referenced the Fourth Circuit case of *Bryan v. BellSouth Communications, Inc.*, 492 F.3d 231 (4th Cir.2007), wherein the court stated in a footnote that a remand order based on lack of subject matter jurisdiction is effective when entered. *Id.* at 235 n. 1.

Because the majority found jurisdiction transferred to the state court upon entry of the order in federal court, the court believed it was unnecessary to determine whether the federal court had to mail a certified order. *Id.* at 62, 723 S.E.2d at 218. The court, however, found that since the issue of mailing was procedural and not jurisdictional, it was not preserved for appellate review as Hulsey failed to make a timely objection. *Id.* at 65, 723 S.E.2d at 220. Additionally, the court noted that to warrant reversal on procedural grounds, Hulsey was required to show that he was prejudiced by the fact that the Charleston County Clerk of Court did not receive a certified copy of the order. *Id.* at 66, 723 S.E.2d at 220. Because Hulsey received personal notice of the remand order, the majority found that Hulsey failed to demonstrate he was prejudiced by the procedural defect. *Id.* at 67, 723 S.E.2d at 221.

In contrast, the dissent found the plain language of section 1447(c) requires that a certified copy of the remand order be mailed before the state court is re-vested with jurisdiction. *Id.* at 81, 723 S.E.2d at 228. Because a certified copy of the remand order was never mailed to the state court clerk, the dissent concluded the state court had no power to proceed. *Id.* The dissent explained that "[b]ecause the state court acted when federal law prohibited it from doing so, the resulting judgment was void." *Id.* Accordingly, the dissent found the trial court's failure to grant relief from the judgment was error and warranted reversal. *Id.*

In reaching its ultimate conclusion, the dissent rejected the majority's reliance on *Lowe. Id.* at 82, 723 S.E.2d at 228–29. The dissent found *Lowe* distinguishable from the instant case as the Fourth Circuit considered the point in time when the federal court's decision to remand becomes unreviewable. *Id.* at 83–84, 723 S.E.2d at 229. The dissent further contended that whether the mailing requirement was procedural or jurisdictional was irrelevant because the prohibition contained in section 1447(c), which provides that a state court cannot proceed until a certified copy of the remand order is mailed to it, cannot be avoided by labeling the mailing requirement procedural. *Id.* at 84, 723 S.E.2d at 230. Additionally, the dissent believed the majority incorrectly relied on the Fourth Circuit's decision in *Bryan* because the remand order in that

case was not based on lack of subject matter jurisdiction and, thus, was governed by another clause of section 1447(c). *Id.* at 86–87, 723 S.E.2d at 231.

Although the dissent acknowledged that a plain reading of section 1447(c) creates a brief period of time in which neither the federal court nor the state court has the power to act, i.e., a "jurisdictional hiatus," it concluded that a certified copy of a remand order based on lack of subject matter jurisdiction must be mailed to the state court before the state court can proceed. *Id.* at 88, 723 S.E.2d at 232.

Undoubtedly, there is support for both positions espoused by the Court of Appeals as the federal and state courts are divided on the jurisdictional implications of section 1447(c).[6] *See* 14C Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, *Federal Practice and Procedure* § 3739 (4th ed.2013) (discussing section 1447(c) and outlining state and federal court decisions applying this provision).

---

6. In addition to *Lowe,* a few federal and state courts have held that jurisdiction transfers back to the state court upon entry of the order of remand. *See, e.g., Whiddon Farms, Inc. v. Delta & Pine Land Co.,* 103 F.Supp.2d 1310 (S.D.Ala.2000); *Van Ryn v. Korean Air Lines,* 640 F.Supp. 284 (C.D.Cal.1985); *Health for Life Brands, Inc. v. Powley,* 203 Ariz. 536, 57 P.3d 726 (Ct.App.2002); *Citizens Bank & Trust Co. v. Carr,* 583 So.2d 864 (La.Ct.App.1991); *State ex rel. Vill. of Los Ranchos de Albuquerque v. City of Albuquerque,* 119 N.M. 169, 889 P.2d 204 (Ct.App.1993), *aff'd,* 119 N.M. 150, 889 P.2d 185 (1994); *Int'l Lottery, Inc. v. Kerouac,* 102 Ohio App.3d 660, 657 N.E.2d 820 (Ct.App.1995).

However, the majority of courts considering this issue have held that the federal court is not divested of jurisdiction until a certified copy of the remand order is mailed to the state court. *See, e.g., Fed. Deposit Ins. Corp. v. Santiago Plaza,* 598 F.2d 634 (1st Cir.1979); *Trans Penn Wax Corp. v. McCandless,* 50 F.3d 217 (3d Cir.1995); *Browning v. Navarro,* 743 F.2d 1069 (5th Cir.1984); *Seedman v. U.S. Dist. Court for the Cent. Dist. of Cal.,* 837 F.2d 413 (9th Cir.1988); *Yarbrough v. Blake,* 212 F.Supp. 133 (W.D.Ark.1962); *Cook v. J.C. Penney Co.,* 558 F.Supp. 78 (N.D.Iowa 1983); *Louisiana v. Sprint Commc'ns Co.,* 899 F.Supp. 282 (M.D.La.1995); *Hubbard v. Combustion Eng'g, Inc.,* 794 F.Supp. 221 (E.D.Mich.1992); *City of Jackson, Miss. v. Lakeland Lounge of Jackson, Inc.* 147 F.R.D. 122 (S.D.Miss.1993); *Campbell v. Int'l Bus. Machs.,* 912 F.Supp. 116 (D.N.J.1996); *Rosenberg v. GWV Travel, Inc.,* 480 F.Supp. 95, 97 n. 3 (S.D.N.Y.1979); *McManus v. Glassman's Wynnefield, Inc.,* 710 F.Supp. 1043 (E.D.Pa.1989); *Blazer Elec. Supply Co. v. Bertrand,* 952 P.2d 857 (Colo.Ct.App.1998); *State v. Lehman,* 203 Neb. 341, 278 N.W.2d 610 (1979); *Quaestor Invs., Inc. v. State of Chiapas,* 997 S.W.2d 226 (Tex.1999).

Thus, we are now confronted with definitively deciding when jurisdiction resumes in the state court following the federal court's entry of an order of remand.

In answering this question, it is instructive to consider the concept of jurisdiction in general as well as the jurisdictional distinctions between state and federal courts. The word "jurisdiction" does not in every context connote subject matter jurisdiction, but rather, is "a word of many, too many, meanings." *Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 467, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

■ Jurisdiction is generally defined as "the authority to decide a given case one way or the other. Without jurisdiction, a court cannot proceed at all in any cause; jurisdiction is the power to declare law, and when it ceases to exist, the only function remaining to a court is that of announcing the fact and dismissing the cause." 32A Am.Jur.2d *Federal Courts* § 581 (2007) (footnotes omitted). Specifically, "[j]urisdiction is composed of three elements: (1) personal jurisdiction; (2) subject matter jurisdiction; and (3) the court's power to render the particular judgment requested." *Indep. Sch. Dist. No. 1 of Okla. County v. Scott*, 15 P.3d 1244, 1248 (Okla.Civ. App.2000).

"Although federal and state courts form one system of jurisprudence, federal courts have no general supervisory power over the state courts, and there is nothing a state court can do to affect federal practice and procedure." 21 C.J.S. *Courts* § 274 (Supp.2013). The United States Supreme Court ("USSC") has explained that "the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent." *Haywood v. Drown*, 556 U.S. 729, 735, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009) (quoting *Claflin v. Houseman*, 93 U.S. 130, 136–37, 23 L.Ed. 833 (1876)).

A case filed in state court may be removed to federal court only when the case originally could have been filed in federal court. 28 U.S.C.A. § 1441(a) (West 2013) (authorizing a defendant to remove "any civil action brought in a State court of

which the district courts of the United States have original jurisdiction"); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.").

A federal court has subject matter jurisdiction over primarily two types of cases: (1) those involving "federal question jurisdiction," which "aris[e] under the Constitution, laws, or treaties of the United States"; and (2) those involving "diversity jurisdiction," which include parties who are residents of different states and the amount in controversy exceeds $75,000. 28 U.S.C.A. §§ 1331, 1332 (West 2013).

■ Removal proceedings impact the jurisdiction of the state court in that removal of a state case to federal court "divests" the state court of jurisdiction. *See* Michael J. Kaplan, Annotation, *Effect, on Jurisdiction of State Court, of 28 U.S.C.A. § 1446(e), Relating to Removal of Civil Case to Federal Court,* 38 A.L.R. Fed. 824 (1978 & Supp.2013) (analyzing jurisdictional and procedural implications of removal of state court case to federal court).

Although most cases speak in terms of "divesting" the state court of jurisdiction during removal proceedings, we believe the more accurate terminology is a "suspension" of the state court's jurisdiction. Here, the circuit court had subject matter jurisdiction over the defamation claims and acquired personal jurisdiction over the parties upon the filing and service of their pleadings. *See Skinner v. Westinghouse Elec. Corp.,* 380 S.C. 91, 93, 668 S.E.2d 795, 796 (2008) ("Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong." (citations omitted)); *Brown v. Evatt,* 322 S.C. 189, 470 S.E.2d 848 (1996) (citing Rule 3(a), SCRCP, and recognizing that circuit court acquires personal jurisdiction over the parties once the action is commenced by the filing and service of the summons and complaint); *Boan v. Jacobs,* 296 S.C. 419, 421, 373 S.E.2d 697, 698 (Ct.App.1988) ("The concept of jurisdiction refers to the authority of a court over a particular person (personal jurisdiction) or the authority of a court to entertain a particular action (subject matter jurisdiction).").

Neither of these jurisdictional elements was affected by Hulsey's motion to remove the case to federal court.[7] Instead, the remaining element, i.e., the state court's *power* to render the particular judgment requested, was suspended or held in abeyance until a determination was made as to whether the cases involved a federal question more appropriately decided by the federal court. *See Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1052 (Fed.Cir.2012) (" 'Power' refers to the court's ability, when it has subject matter jurisdiction, to grant equitable and legal relief to a party.").

 Because removal proceedings encroach upon a state court's jurisdiction, removal statutes must be strictly construed and any doubts are to be resolved in favor of state court jurisdiction and remand. *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir.1999); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). The USSC has explained:

> The removal statute[,] which is nationwide in its operation, was intended to be uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied. Hence the Act of Congress must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits are to be removed from the state to the federal courts.

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Furthermore, as the rules of statutory construction dictate, it is also necessary for courts to consider the legislative history in order to effectuate the purpose of the statute. *See Kennedy v. S.C. Ret. Sys.*, 345 S.C. 339, 348, 549 S.E.2d 243, 247 (2001) (stating that where "the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself").

Applying these rules, the California Court of Appeal explained:

---

7. Indeed, if a state court was divested of personal jurisdiction and subject matter jurisdiction following removal proceedings, the parties would have to re-file a lawsuit each time a federal court issued an order remanding the case to state court.

Before 1948, the statute governing remand stated in relevant part, "Whenever any cause shall be removed from any State court into any district court of the United States, and the district court shall decide that the cause was improperly removed, and order the same to be remanded to the State court from whence it came, *such remand shall be immediately carried into execution,* and no appeal . . . from the decision of the district court so remanding such cause shall be allowed." (Judicial Code § 28 (1911), italics added; *see also* 28 U.S.C. § 71 (1940).) In 1948, Congress revised title 28 of the United States Code, and placed the procedures governing remand in section 1447. In doing so, Congress deleted the former provision stating that the "remand shall be immediately carried into execution," replacing it with a command that the district court clerk mail a certified copy of the remand order to the state court clerk, and providing that "[t]he state court may thereupon proceed with [the] case." (§ 1447, as enacted June 25, 1948, ch. 646, 62 Stat. 939.) Although some courts—including the Ninth Circuit—had interpreted even the former provision as requiring a certified copy of the remand order to be filed with the clerk of the state court before jurisdiction was transferred (*see, e.g., Bucy v. Nevada Const. Co.* (9th Cir.1942) 125 F.2d 213, 217), the new statutory language makes that requirement explicit.

*Spanair S.A. v. McDonnell Douglas Corp.,* 172 Cal.App.4th 348, 357, 90 Cal.Rptr.3d 864 (2009). Although the California Court of Appeal recognized its interpretation appeared to elevate "form over substance," it emphasized "the history and plain language of section 1447(c), leave no doubt that Congress made the mailing of a certified copy of the remand order the 'determinable jurisdictional event after which the state court can exercise control over the case without fear of further federal interference.' " *Id.* (quoting *Trans Penn Wax Corp. v. McCandless,* 50 F.3d 217, 225 (3d Cir.1995)). Despite legitimate concerns over the wisdom of this rule, the court declined to "second-guess Congress by rewriting the statute." *Id.*

█ As evidenced by the language in *Spanair,* Congress purposefully included the mailing of a certified order as a jurisdictional requirement and, thus, the mere entry of an order is not self-executing as to the jurisdiction of the state

court. *See Arnold v. Garlock, Inc.*, 278 F.3d 426, 437–38 (5th Cir.2001) ("A § 1447(c) order of remand is not self-executing . . . This provision creates *legal significance* in the mailing of a certified copy of the remand order in terms of determining the time at which the district court is divested of jurisdiction. On that basis, the federal court is not divested of jurisdiction until the remand order, citing the proper basis under § 1447(c), is certified and mailed by the clerk of the district court." (emphasis added) (citation omitted)).

We believe the reasoning for this inclusion is sound. As explained by the Missouri Court of Appeals:

> Requiring the state to wait to proceed with the case until after a certified remand order has been sent ensures that the federal court has indeed ceased to exercise jurisdiction over the merits of the case. Under the case law of most circuits, federal courts have the power to review, alter, or reverse an erroneous order of remand during the short period between the signing of a remand order and the certification and mailing to the state court. Thus, a rule making clear that jurisdiction to proceed does not immediately revert back to the state court upon the signing of the order allows a civil defendant to retain the right to assert that the order of remand was improvidently entered. Because remands are not appealable, 28 U.S.C. § 1447(d), it makes sense to allow the federal district court an opportunity to correct any error or misunderstanding before the remand order is final. A clear rule avoids confusing litigants about where jurisdiction may lie when one of the parties is attempting to obtain an order setting aside of the order of remand.

*State ex rel. Nixon v. Moore*, 108 S.W.3d 813, 818 (Mo.Ct.App. 2003) (citation omitted). Furthermore, we do not believe the fear of a brief jurisdictional hiatus between the federal and state court should dictate a result that is clearly contrary to the plain terms of the statute.

■ Based on the foregoing, we conclude that Judge Young and, in turn, the Court of Appeals erred in finding the state court had jurisdiction to conduct the proceedings as the absence of the certified order precluded jurisdiction from resuming in the state court. Although this Court often defers to

Fourth Circuit decisions interpreting federal law, which in the instant case would be *Lowe*, it is not obligated to do so in view of the lack of uniformity amongst the federal circuits. *See State Bank of Cherry v. CGB Enters.*, 368 Ill.Dec. 503, 984 N.E.2d 449, 459 (2013) ("While we are *bound* only by the United States Supreme Court, if the lower federal courts are uniform on their interpretation of a federal statute, this court, in the interest of preserving unity, will give *considerable weight* to those courts' interpretations of federal law and find them to be highly persuasive. However, if the federal courts are split, we may elect to follow those decisions we believe to be better reasoned." (citation omitted)); *Cash Distrib. Co. v. Neely*, 947 So.2d 286, 294–95 (Miss.2007) (declining to follow Fifth Circuit's minority position and stating, "While this Court often defers to Fifth Circuit decisions interpreting federal law, we are under no obligation to do so").

Admittedly, this conclusion appears to elevate form over substance and, in turn, may be viewed as harsh considering the significant verdicts. However, we believe it is legally correct and consistent with this Court's position on other jurisdictional issues, such as the effect of the issuance of a remittitur. *See* Rule 221(b), SCACR ("The remittitur shall contain a copy of the judgment of the appellate court, shall be *sealed with the seal and signed by the clerk of the court*, and unless otherwise ordered by the court shall not be sent to the lower court or administrative tribunal until fifteen (15) days have elapsed (the day of filing being excluded) since the filing of the opinion, order, judgment, or decree of the court finally disposing of the appeal." (emphasis added)); *Wise v. S.C. Dep't of Corrs.*, 372 S.C. 173, 174, 642 S.E.2d 551, 551 (2007) ("When the remittitur has been *properly* sent, the appellate court no longer has jurisdiction over the matter and no motion can be heard thereafter." (emphasis added)).

Because the absence of a certified order precluded jurisdiction from resuming in the state court, we hold the state court proceedings conducted after the federal court's entry of the remand order are void. As a result, we reverse the decision of the Court of Appeals, vacate both judgments, and remand the cases to recommence in the state court from the procedural point at which the Charleston County Clerk of Court received

a certified copy of the federal court's remand order.[8] *See Davis v. Davis*, 267 S.C. 508, 229 S.E.2d 847 (1976) (concluding that all orders issued by state court after proceeding was removed to federal court were void); *Peoples Trust & Sav. Bank v. Humphrey*, 451 N.E.2d 1104 (Ind.Ct.App.1983) (noting that, during the pendency of the removal petition, any proceedings by the state trial court are void until remand by the federal court); 77 C.J.S. *Removal of Cases* § 154 (Supp. 2013) ("Proceedings in the state court after the requirements for removal are met are not merely erroneous, but null and void. No subsequent pleadings can be filed in the state court." (footnotes omitted)).

Although this ruling would be dispositive of both appeals, we believe the bench and bar would benefit from a definitive ruling on certain remaining issues. Specifically, we address: (1) the computation of time for filing responsive pleadings following the state court's receipt of a certified remand order; and (2) the level to which a defendant may participate in a post-default damages hearing.

### B. Time for Filing an Answer Following a Properly Filed Remand Order

■ Here, Father and Son served their Complaints on Hulsey's law firm on April 20, 2006, and on Hulsey individually on April 21, 2006. On May 5, 2006, Hulsey removed the case to federal court. The remand order was dated July 19, 2006, and Hulsey's counsel was given electronic notice of the remand order on July 20, 2006. The Charleston County Clerk of Court filed the uncertified copy of the remand order on July 21, 2006, and mailed notice of the filing on July 27, 2006, pursuant to Rule 77, SCRCP.[9] Father's and Son's motions for

---

8. On March 5, 2009, the Charleston County Clerk of Court received the certified remand order from the federal district court. Hulsey filed and served his Answer on March 13, 2009.

9. Rule 77(d), SCRCP, provides in relevant part:

Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by first class mail upon every party affected thereby who is not in default for failure to appear, and shall make a note in the case file or docket sheet of the mailing. Such mailing shall not be necessary to parties who have already received notice. Such mailing is sufficient notice for all purposes for which notice of

entry of default, which were dated August 9, 2006, were filed on August 21, 2006, and Hulsey was found in default that same day. The entry of default was filed on August 22, 2006.

On August 29, 2006, Hulsey filed an Answer and moved to set aside the entry of default. During the hearing before Judge Pieper, Hulsey stated that he believed he had thirty days from service of notice of the remand order from the Charleston County Clerk of Court to file an Answer to the Complaint in state court. Because the state court noticed him of the remand order, he believed he had an additional five days to Answer. Based on these beliefs, Hulsey claimed his Answer was timely made as it was not due until August 31, 2006. Additionally, Hulsey asserted he had a meritorious defense to the action and that the Limehouses would suffer no prejudice if the entry of default was set aside.

Judge Pieper denied Hulsey's motion to set aside the entry of default. In so ruling, Judge Pieper analyzed the threshold question of when the "30 day time period for the defendants to file an answer began to run and what effect the removal of the case and its subsequent remand had on that time period." Noting that this issue was a matter of first impression in this state, Judge Pieper ruled that any unexpired portion of the thirty-day time period to answer was tolled during the time the case was removed to federal court. Therefore, Hulsey had until August 5, 2006,[10] to file an Answer to the Complaint. Judge Pieper found it unnecessary to decide whether Hulsey was entitled to five additional days for mailing pursuant to Rule 6(e), SCRCP because Hulsey's Answer was filed twenty-four days outside of the tolled time frame. Accordingly, Judge Pieper found the entry of default was proper.[11] He

---

the entry of an order or judgment is required by these rules; but any party may in addition serve a notice of entry on any other party in the manner provided in Rule 5 for the service of such papers.

**10.** Because Hulsey removed the case fourteen days after he was served, Judge Pieper found Hulsey had sixteen days following the remand order to file his Answer.

**11.** In support of his method of time computation, Judge Pieper relied on *Cotton v. Federal Land Bank of Columbia,* 246 Ga. 188, 269 S.E.2d 422 (1980), and *Dauenhauer v. Superior Court In and For Sonoma County,* 149 Cal.App.2d 22, 307 P.2d 724 (1957), wherein the appellate courts tolled the time for filing during removal.

further ruled that "there was no good reason presented by the defendants for their failure to file a timely answer other than attorney confusion about the deadline for when an answer was due." Judge Pieper found "no reasonable basis for defense counsel's assumption that the 30 day time to file answer starts *completely anew* upon remand from the federal court." Thus, Judge Pieper declined to set aside the entry of default.

The majority of the Court of Appeals affirmed Judge Pieper's decision, finding there was no authority in this state to support Hulsey's position that a removing party is entitled to a fresh thirty days to answer a Complaint upon remand. *Limehouse,* 397 S.C. at 68–69, 723 S.E.2d at 221–22. After reviewing state and federal rules of procedure,[12] the majority declined to adopt a new rule that extended the time for filing beyond the thirty-day limit. *Id.* at 69, 723 S.E.2d at 222.

Although there is authority from other jurisdictions to support Hulsey's claim that the time for filing began anew after the case was properly remanded to state court,[13] we agree with the Court of Appeals and decline to adopt such a rule.

As previously discussed, once the case was removed to federal court, the state court's jurisdiction was suspended or held in abeyance until the case was properly remanded. When the state court resumed jurisdiction, it had a duty "to proceed as though no removal had been attempted." *State v. Columbia Ry., Gas & Elec. Co.,* 112 S.C. 528, 537, 100 S.E.

---

12. The majority considered Rule 12(a), SCRCP (stating, "A defendant shall serve his answer within 30 days after the service of the complaint upon him"), and Fed.R.Civ.P. 81(c)(2) (providing a defendant twenty-one days to file an Answer after a civil action is removed from a state court).

13. *See* Ark. R. Civ. P. 12(a)(3) (West 2013) (providing an adverse party with thirty days from receipt of notice that the remand order was filed in state court to file an Answer); Cal.Code Civ. Proc. § 430.90 (West 2013) (providing thirty days from the state court's receipt of the order of remand to file an Answer); Iowa Code Ann. § 1.441(7) (West 2013) (providing that the time for pleadings shall begin anew after a remand order is filed in the state court); N.C. Gen.Stat. Ann. § 1A–1, Rule 12(a)(2) (West 2013) (providing thirty days to file an Answer from the date a remand order is filed in the state court); Tex.R. Civ. P. 237a (West 2013) (providing fifteen days to file an answer after notice that a remand order was filed in state court).

355, 357 (1919). Thus, the time for filing an Answer was tolled until the state court resumed jurisdiction.

Notably, other jurisdictions have reached a similar conclusion. *See Lucky Friday Silver–Lead Mines Co. v. Atlas Mining Co.,* 88 Idaho 11, 395 P.2d 477, 480 (1964) ("While the cause is before the Federal court, the state court has no jurisdiction or authority to receive any pleadings in the cause nor can it issue any orders concerning the cause. . . . Thus the period of time the cause is before the Federal court, cannot be considered in computing the time within which the appellant had to appear and plead to the cause."); *Peoples Trust & Sav. Bank v. Humphrey,* 451 N.E.2d 1104, 1109 (Ind.Ct.App.1983) (finding removal of action to federal court tolled ten-day time limit to apply for change of venue and stating that "tolling the time period eliminates uncertainty, preserves the status quo, and is easily applied"); *Jatczyszyn v. Marcal Paper Mills, Inc.,* 422 N.J.Super. 123, 27 A.3d 213 (2011) (concluding that discovery period established by state court rules is tolled during the time a motion to remand is pending before the federal court); *see also Gen. Elec. Credit Corp. v. Smith,* 484 So.2d 75 (Fla.Dist.Ct.App.1986) (holding that time for filing appeal was tolled during period when case was removed to federal court); *Hartlein v. Illinois Power Co.,* 151 Ill.2d 142, 176 Ill.Dec. 22, 601 N.E.2d 720 (1992) (finding removal of action to federal court tolled time limit on petition for leave to appeal circuit court's grant of preliminary injunction).

Based on the foregoing, we hold that removal of a state court case to federal court tolls the time period for filing responsive pleadings.

## C. Defaulting Defendant's Limited Participation in Damages Hearings

■ Hulsey contends Judge Young erred in imposing unduly restrictive limitations on evidence presented at the damages hearings. In support of this contention, Hulsey claims this Court's ruling in *Howard v. Holiday, Inns, Inc.,* 271 S.C. 238, 246 S.E.2d 880 (1978), which limits the defendant's ability to participate in the damages hearing, is no longer applicable as it pre-dates the 1985 adoption of Rule 55. Specifically, Hulsey urges this Court to re-examine *Howard* in light of the lan-

guage of Rule 55(b)(2), which requires the trial court "to establish the truth of any averment of evidence or to make an investigation of any other matter." [14]

Prior to and throughout the damages hearings, Hulsey sought to call witnesses and present evidence. In Son's case, Hulsey also sought to engage in discovery so that he could fully prepare for cross-examination. Based on *Howard,* Judge Young limited Hulsey's participation to cross-examination and objection to the plaintiffs' evidence. The Court of Appeals agreed with Judge Young's ruling and specifically declined to "diverge from longstanding rules established by" this Court. *Limehouse,* 397 S.C. at 72–73, 723 S.E.2d at 223–24.

This case presents an opportunity for this Court to re-examine our decision in *Howard* in conjunction with Rule 55(b)(2), SCRCP. As will be more thoroughly discussed, we reaffirm our decision in *Howard* and the procedures adopted therein.

In 1978, under the former statutes governing default proceedings,[15] this Court issued its decision in *Howard,* wherein it assessed three approaches as to how a defaulting defendant could contest the issue of damages. *Howard,* 271 S.C. at 241, 246 S.E.2d at 882. Specifically, this Court noted that it could allow damages to be determined: (1) in an ex parte proceeding, denying the defendant any right to participate; (2) after a full adversary contest, including the right of the defendant to produce evidence in rebuttal or in mitigation; or (3) with defense counsel's participation limited to cross-examination and objection to plaintiff's evidence. *Id.* This Court found the third approach was the proper one and approved it for use in the courts of this state. *Id.*

For the past thirty-five years, our appellate courts have consistently adhered to the decision in *Howard. See, e.g.,*

---

**14.** Rule 55(b)(2), SCRCP, provides more fully that, in cases where default has been entered and the plaintiff's damages are not a sum certain, a trial judge may schedule a hearing on damages if it would "enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter."

**15.** S.C.Code Ann. §§ 15–35–310 & –320 (1976) (repealed 1985).

*Roche v. Young Bros., Inc., of Florence,* 332 S.C. 75, 504 S.E.2d 311 (1998); *Solley v. Navy Fed. Credit Union,* 397 S.C. 192, 723 S.E.2d 597 (Ct.App.2012). Although our courts have scrutinized default judgments involving punitive damages in order to prevent harsh results, we have declined to expand a defendant's participation in these hearings beyond what was approved of in *Howard. See Lewis v. Congress of Racial Equality and/or C.O.R.E., Inc.,* 275 S.C. 556, 274 S.E.2d 287 (1981) (citing *Howard* and raising the issue of the amount of damages *ex mero motu* where plaintiff obtained a default judgment for $150,000 in actual damages and $100,000 in punitive damages in an unliquidated claim and remanding to trial court for a *de novo* hearing on damages).

However, in an apparent reaction to juries awarding significant verdicts of actual and punitive damages, other jurisdictions have allowed defendants to call witnesses and present evidence. *See* B. Finberg, Annotation, *Defaulting Defendant's Right to Notice and Hearing as to Determination of Amount of Damages,* 15 A.L.R.3d 586, § 5 (1967 & Supp.2013) (identifying state cases where defaulting defendant had the right to cross-examine plaintiff's witnesses and to introduce affirmative testimony on his own behalf in mitigation of the damages); 46 Am.Jur.2d *Judgments* § 299 (2006) (citing state cases where courts have approved varying levels of defendant's participation in post-default proceedings); *Payne v. Dewitt,* 995 P.2d 1088, 1094–95 (Okla.1999) (recognizing defaulting defendant's statutory right to cross-examine witnesses and introduce evidence and stating, "The trial court must leave to a meaningful inquiry the *quantum of actual and punitive damages* without stripping the party in default of basic forensic devices to test the truth of the plaintiff's evidence").[16]

---

**16.** In reaching this conclusion, the court in *Payne* relied on the following authorities: *J & P Constr. Co. v. Valta Constr. Co.,* 452 So.2d 857 (Ala.1984); *Dungan v. Superior Court In and For Pinal County,* 20 Ariz.App. 289, 512 P.2d 52 (1973); *Kohlenberger, Inc. v. Tyson's Foods, Inc.,* 256 Ark. 584, 510 S.W.2d 555 (1974); *Pittman v. Colbert,* 120 Ga. 341, 47 S.E. 948 (1904); *Stewart v. Hicks,* 182 Ind.App. 308, 395 N.E.2d 308 (1979); *Greer v. Ludwick,* 100 Ill.App.2d 27, 241 N.E.2d 4 (1968); *Howard v. Fountain,* 749 S.W.2d 690 (Ky.Ct.App.1988); *Bissanti Design/Build Group v. McClay,* 32 Mass.App.Ct. 469, 590 N.E.2d 1169 (1992); *Lindsey v. Drs. Keenan, Andrews & Allred,* 118 Mont. 312, 165 P.2d 804 (1946); *Gallegos v. Franklin,* 89 N.M. 118, 547 P.2d 1160

Despite these concerns and the authority from other jurisdictions, we adhere to the procedures adopted in *Howard.* If our courts were to allow a defaulting defendant to fully participate in a post-default hearing, we believe there would be no consequence of default. *See Roche v. Young Bros., Inc., of Florence,* 332 S.C. 75, 81, 504 S.E.2d 311, 314 (1998) ("It is well settled that by suffering a default, the defaulting party is deemed to have admitted the truth of the plaintiff's allegations and to have conceded liability."). Furthermore, unlike Hulsey, we discern no basis in the language of Rule 55(b)(2) that would require us to depart from *Howard.*

■■■■ Finally, we note there are due process safeguards for cases involving punitive damages. It is well established that the relief granted in a default judgment is limited to that supported by the allegations in the Complaint and the proof submitted at the damages hearing. *Jackson v. Midlands Human Res. Ctr.,* 296 S.C. 526, 529, 374 S.E.2d 505, 506 (Ct.App.1988) ("In a default case, the plaintiff must prove by competent evidence the amount of his damages, and such proof must be by a preponderance of the evidence. Although the defendant is in default as to liability, the award of damages must be in keeping not only with the allegations of the complaint and the prayer for relief, but also with the proof that has been submitted. A judgment for money damages must be warranted by the proof of the party in whose favor it is rendered." (citations omitted)). Moreover, trial judges and appellate courts conduct a review of the award to ensure the verdict is not excessive and is supported by the evidence. *See Mitchell v. Fortis Ins. Co.,* 385 S.C. 570, 686 S.E.2d 176 (2009) (discussing the history of due process limitations on punitive damages awards and identifying guideposts for post-judgment review of punitive damages awards).

Having found that *Howard* still governs post-default proceedings, we hold that Judge Young correctly precluded Hul-

(Ct.App.1976); *Napolitano v. Branks,* 128 A.D.2d 686, 513 N.Y.S.2d 185 (1987); *Bashforth v. Zampini,* 576 A.2d 1197 (R.I.1990); *Adkisson v. Huffman,* 225 Tenn. 362, 469 S.W.2d 368 (1971); *Ne. Wholesale Lumber, Inc. v. Leader Lumber, Inc.,* 785 S.W.2d 402 (Tex.Ct.App.1989); *Synergetics By and Through Lancer Indus., Inc. v. Marathon Ranching Co.,* 701 P.2d 1106 (Utah 1985); *Midwest Developers v. Goma Corp.,* 121 Wis.2d 632, 360 N.W.2d 554 (Ct.App.1984).

sey from engaging in discovery and limited his participation to cross-examination and objection to the plaintiff's evidence.

### III. Conclusion

Based on the foregoing, we hold the lack of a certified remand order precluded jurisdiction from resuming in the state court. Accordingly, we reverse the decision of the Court of Appeals and vacate the state court proceedings. We remand the cases to recommence from the procedural point at which the Charleston County Clerk of Court received the federal court's certified remand order. Additionally, we find the time for filing responsive pleadings was tolled during the removal proceedings as no subsequent pleadings could be filed in state court until jurisdiction resumed. Finally, we reaffirm our decision in *Howard* wherein we limited a defendant's participation in a post-default hearing to cross-examination and objection to the plaintiff's evidence as we find this effectuates the purpose of default proceedings and is consistent with Rule 55(b)(2).

**REVERSED, VACATED, AND REMANDED.**

TOAL, C.J., HEARN, J., and Acting Justice JAMES E. MOORE, concur.

KITTREDGE, J., concurring in result only.