**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**No. 18-2014**

---

PAUL H. HULSEY; HULSEY LAW GROUP LLC,

        Plaintiffs - Appellants

      v.

FRANK M. CISA; CISA & DODDS LLP; PINNACLE BANK, Successor in Interest to Southcoast Community Bank; ROBERT A. DANIEL, JR.; LAWTON LIMEHOUSE, SR.; LAWTON LIMEHOUSE, JR.; WLL LLC; RICHARD B. HOMES; L&L SERVICES LLC; RICHARD B. HOMES, CPA, LLC,

        Defendants - Appellees.

---

Appeal from the United States District Court for the District of South Carolina, at Charleston.  Patrick Michael Duffy, Senior District Judge.  (2:17-cv-03095-PMD)

---

Argued:  October 29, 2019                      Decided:  January 17, 2020

---

Before KING, FLOYD, and RUSHING, Circuit Judges.

---

Reversed and remanded by published opinion.  Judge Rushing wrote the opinion, in which Judge King and Judge Floyd joined.

---

**ARGUED:** Phillip Russel Myles, Samuel Fraser Reid, III, MCDOWELL KNIGHT ROEDDER & SLEDGE LLC, Mobile, Alabama, for Appellants.  Marcus Angelo Manos, NEXSEN PRUET, LLC, Columbia, South Carolina, for Appellees. **ON BRIEF:** G. Robert Blakey, NOTRE DAME LAW SCHOOL, Paradise Valley, Arizona, for Appellants.  Cherie K. Durand, HULSEY LAW GROUP, LLC, Mt. Pleasant, South Carolina, for Appellant Paul H. Hulsey.  Michael B. McCall, II, EARHART OVERSTREET LLC,

Charleston, South Carolina, for Appellees Frank M. Cisa and Cisa & Dodds, LLP.  Joseph C. Wilson, IV, PIERCE, SLOAN, WILSON, KENNEDY & EARLY LLC, Charleston, South Carolina, for Appellee Lawton Limehouse, Jr.  Russell G. Hines, Stephen L. Brown, YOUNG CLEMENT RIVERS, LLP, Charleston, South Carolina, for Appellees Richard B. Homes and Richard B. Homes, CPA, LLC.  Justin Kahn, KAHN LAW FIRM, Charleston, South Carolina, for Appellees Lawton Limehouse, Sr., WLL LLC, and L&L Services LLC.

———————————

RUSHING, Circuit Judge:

In this case, we decide whether the district court properly applied the *Rooker-Feldman* doctrine to dismiss this federal action alleging misconduct by litigants in two lawsuits previously tried in state court. We reverse and remand, concluding that the *Rooker-Feldman* doctrine does not apply.

I.

We begin with the state lawsuits that form the basis for the federal claims. In April 2006, Lawton Limehouse, Sr., and his son, Lawton Limehouse, Jr., filed separate defamation complaints against Paul Hulsey and Hulsey Law Group, LLC, (collectively, Hulsey) in South Carolina state court. Hulsey removed the two suits to the United States District Court for the District of South Carolina. The Limehouses each moved to remand, and the district court granted their motions on July 20, 2006. After remand, Hulsey failed to file a timely answer to either complaint, causing the South Carolina court to enter orders of default against him in both cases.

Limehouse, Sr.'s claim proceeded to a jury trial to determine damages and, because Hulsey had defaulted, the court denied him discovery or the chance to present evidence at the trial. The jury returned a substantial verdict in favor of Limehouse, Sr., and Hulsey appealed. The South Carolina Court of Appeals affirmed, but the South Carolina Supreme Court granted Hulsey's petition for a writ of certiorari. While the appeal of Limehouse, Sr.'s verdict ascended through the courts, Limehouse, Jr.'s claim proceeded to a jury trial. The jury returned a substantial default damages verdict in favor of Limehouse, Jr. Hulsey was also denied discovery or the opportunity to present evidence in that case. The South

3

Carolina Supreme Court certified an appeal in Limehouse, Jr.'s case and considered the two defamation cases together in a consolidated appeal. *See Limehouse v. Hulsey*, 744 S.E.2d 566 (S.C. 2013).

The South Carolina Supreme Court held that the state trial court lacked jurisdiction over the lawsuits because of a procedural defect in the handling of the July 20, 2006 remand order. *See Limehouse*, 744 S.E.2d at 575. The court vacated the verdicts and remanded the cases with orders for proceedings to recommence in the trial court from the point at which the clerk of court received a certified copy of the remand order. Although the South Carolina Supreme Court vacated the default damages verdicts, the court nevertheless noted that the trial court had been correct to preclude Hulsey from conducting discovery or presenting evidence after the default. *See id.* at 579.

On remand, Limehouse, Sr.'s case entered discovery, during which Hulsey obtained evidence of a large tax levy against the Limehouses' businesses. The case proceeded to a trial on the merits in which Hulsey fully participated. At trial, Hulsey argued that the tax levy, not his allegedly defamatory statements, was the cause of the Limehouses' monetary losses. This time, the jury returned a verdict for Hulsey, and Limehouse, Sr., appealed. While Limehouse, Sr.'s appeal was pending, the parties conducted discovery in Limehouse, Jr.'s case. But before Limehouse, Jr.'s case could go to trial or Limehouse, Sr.'s appeal could be resolved, Hulsey agreed to settle both suits. By August 24, 2016, both cases had been dismissed pursuant to the settlement agreement.

A year later, on November 15, 2017, Hulsey filed the instant suit in the United States District Court for the District of South Carolina, naming as defendants the Limehouses,

4

their businesses, the attorney and law firm who represented the Limehouses in the defamation suits, and two witnesses (and associated businesses) who testified at the default damages trials. Hulsey alleged that the defamation lawsuits were a sham and that the defendants had concealed crucial evidence, most notably the tax levy, in order to obtain verdicts against him. The complaint alleged perjury, mail fraud, fabrication of evidence, and threats of violence, among other fraudulent and extortionate conduct. Hulsey further alleged that these acts cohered into a pattern of racketeering such that the defendants had violated the Racketeer Influenced and Corrupt Organizations Act (RICO).

The district court dismissed the complaint on the defendants' motions. The court interpreted Hulsey's allegation that the defendants had concealed evidence as a veiled attack on the state-court orders denying Hulsey discovery in the default damages trials. As the district court saw it, Hulsey's complaint essentially argued "that the state court should have allowed [Hulsey] to discover the [tax] levy sooner, and that [the fraudulent scheme] was enabled by the state court's decision to deny [Hulsey] the opportunity to pursue discovery [during] default." *Hulsey v. Cisa*, No. 2:17-3095-PMD, 2018 WL 6650360, at *3 (D.S.C. Aug. 2, 2018). The district court reasoned that Hulsey's complaint sought to "undermine" the South Carolina Supreme Court's ruling that Hulsey was not entitled to discover the tax levy in the state-court default proceedings and therefore the complaint ran afoul of the *Rooker-Feldman* doctrine. The district court dismissed the complaint for lack of subject-matter jurisdiction.

Hulsey now appeals, arguing that the *Rooker-Feldman* doctrine does not bar his claims. The defendants disagree and also raise a raft of alternative bases for affirmance.

5

We review the district court's dismissal de novo. *See Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 715 (4th Cir. 2006).

## II.

Among the federal courts, only the Supreme Court possesses the authority to exercise appellate jurisdiction over state-court judgments. Congress vested such authority in the Supreme Court in 28 U.S.C. § 1257(a). *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–292 (2005). By contrast, Congress has given federal district courts original jurisdiction over various actions but has not "authorize[d] district courts to exercise appellate jurisdiction over state-court judgments." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 644 n.3 (2002); *see, e.g.*, 28 U.S.C. §§ 1330–1369. The *Rooker-Feldman* doctrine takes its name from the only two cases in which the Supreme Court has applied these principles to foreclose district court jurisdiction over suits that were, in essence, appeals from state-court judgments: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

In *Rooker*, the plaintiffs, having lost in state court, brought suit in federal district court, alleging that the state-court judgment contravened the Constitution and asking the district court to declare the judgment "null and void." *Rooker*, 263 U.S. at 414. The Supreme Court held that the district court could not entertain such a claim because "[t]o do so would be an exercise of appellate jurisdiction" and "[t]he jurisdiction possessed by the District Courts is strictly original." *Id.* at 416. In *Feldman*, the plaintiffs sued a state court for refusing to waive a bar admission rule that required applicants to have graduated from an approved law school. 460 U.S. at 463. The plaintiffs alleged that the state court's

6

decision violated federal law, and they sought an injunction requiring the state court to admit the plaintiffs to the bar or permit them to sit for the bar examination. *See id.* at 468–469. The Supreme Court held that the district court lacked jurisdiction over the complaints to the extent the plaintiffs sought review of the state court's denial of their petitions for waiver. Reiterating its reasoning from *Rooker*, the Supreme Court held that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *Feldman*, 460 U.S. at 482.

Since *Feldman*, the Supreme Court has repeatedly emphasized that the *Rooker-Feldman* doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284; *see Lance v. Dennis*, 546 U.S. 459, 460, 464 (2006) (per curiam); *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). In other words, the doctrine simply precludes federal district courts from exercising what would be, in substance, appellate jurisdiction over final state-court judgments. *See Thana v. Bd. of License Comm'rs*, 827 F.3d 314, 319 (4th Cir. 2016) ("The doctrine goes no further than necessary to effectuate Congress' allocation of subject matter jurisdiction between the district courts and the Supreme Court.").

This case does not fall within the *Rooker-Feldman* doctrine's narrow scope, for multiple independent reasons. First and foremost, Hulsey is not complaining of an injury caused by a state-court judgment. *See Exxon*, 544 U.S. at 284. In the federal complaint, Hulsey sought damages, disgorgement, and injunctive relief against the Limehouses and

7

their co-defendants for alleged RICO violations, fraud, and abuse of process, among other allegations. Hulsey does not "seek[] redress for an injury caused by the state-court decision *itself*," *Davani*, 434 F.3d at 718 (emphasis added), but rather for injuries caused by the defendants' allegedly fraudulent conduct in prosecuting the defamation suits against him in state court. Even if the denial of discovery in the default proceedings may have aided the defendants' alleged fraudulent concealment of evidence, that does not make the state court's discovery ruling the cause of Hulsey's injury. A plaintiff's injury at the hands of a third party may be "ratified, acquiesced in, or left unpunished by" a state-court decision without being "produced by" the state-court judgment. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005). Such is the case here. According to the complaint, Hulsey's injuries were caused by the defendants' fraud, which was merely enabled by the state court's discovery ruling. The defendants' alleged use of the courts as a tool to defraud does not make the state court's ruling the cause of Hulsey's injury.

Further, this is not a case in which "the process for appealing a state court judgment to the Supreme Court under 28 U.S.C. § 1257(a) has been sidetracked by an action filed in district court *specifically* to review that state court judgment." *Thana*, 827 F.3d at 320. As an initial matter, Hulsey did not lose in state court, so Hulsey could not be seeking "an appeal of an unfavorable state-court decision." *Lance*, 546 U.S. at 466; *see Exxon*, 544 U.S. at 284 (holding that the *Rooker-Feldman* doctrine is confined to cases "brought by state-court losers"). Hulsey prevailed in Limehouse, Sr.'s suit and then, while that case was pending on appeal, Hulsey settled both Limehouse, Sr.'s and Limehouse, Jr.'s suits. The defendants argue that Hulsey qualifies as a state-court loser because the state courts

8

denied him discovery in the default damages trials, but those interlocutory orders were subsequently nullified when the South Carolina Supreme Court ordered new trials in which Hulsey had the opportunity to conduct discovery and fully participate. The discovery rulings thus were not "final state-court judgments" against Hulsey over which Hulsey sought the district court to "exercis[e] appellate jurisdiction." *Lance*, 546 U.S. at 463.

Nor does Hulsey's federal lawsuit "invit[e] district court review and rejection" of a state-court judgment, as would typify an appeal. *Exxon*, 544 U.S. at 284. This criterion is not satisfied by mere overlap between state-court litigation and the plaintiff's claim; the federal action must be filed "*specifically* to review th[e] state court judgment." *Thana*, 827 F.3d at 320. Hulsey's complaint does not seek, implicitly or explicitly, reversal or modification of the South Carolina court's judgment in the defamation cases, which he ultimately settled.

On this point, the district court reasoned that "the crux" of Hulsey's RICO claim was that the defendants fraudulently concealed the tax levy against their businesses and Hulsey's only avenue for learning of the levy was discovery, which he was denied by the South Carolina courts. *Hulsey*, 2018 WL 6650360, at *3. The district court thus was concerned that adjudicating Hulsey's complaint would "undermine" the South Carolina Supreme Court's ruling that Hulsey was not entitled to discover the tax levy in the state-court default proceedings. *Id.* But Section 1257 does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon*, 544 U.S. at 293. Rather, "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion

9

that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* (internal quotation marks and alterations omitted). Here, Hulsey has presented independent claims about the defendants' alleged misconduct in instituting and pursuing the defamation suits against him. That Hulsey previously may have presented to the state court some of the arguments in his federal complaint does not strip the district court of jurisdiction. Because the fraud claims in Hulsey's complaint do not challenge the South Carolina court's decision regarding the defamation claims litigated in state court, it is "not an impediment to the exercise of federal jurisdiction that the 'same or a related question' was earlier aired between the parties in state court." *Skinner*, 562 U.S. at 532 (quoting *Exxon*, 544 U.S. at 292–293). Hulsey's claims may encounter legal barriers, including preclusion, but the district court has jurisdiction to adjudicate those barriers because Hulsey's complaint asserts claims independent from the state-court decision.

The defendants argue that Hulsey's claims of fraud are, at a minimum, "inextricably intertwined" with the arguments Hulsey made and lost before the South Carolina courts and therefore the *Rooker-Feldman* doctrine should apply. The phrase "inextricably intertwined" comes from the Supreme Court's decision in *Feldman.* There, the Court explained that a litigant may seek to overturn a state-court judgment by reiterating the same arguments the litigant pursued in the state court or by attacking the state-court judgment on grounds not previously raised but "inextricably intertwined" with the state-court judgment. *See Feldman*, 460 U.S. at 482 n.16. In either case, the federal court "is in essence being called upon to review the state court decision," which a district court may

10

not do. *Id.*; *see id.* at 486–487 (holding plaintiffs' claims that the state court acted arbitrarily and capriciously in denying plaintiffs' petitions for waiver were inextricably intertwined with the state-court judgment denying their petitions). We have explained that "*Feldman*'s 'inextricably intertwined' language does not create an additional legal test for determining when claims challenging a state-court decision are barred." *Davani*, 434 F.3d at 719. Rather, it "merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court." *Id.* Because Hulsey is not a state-court loser complaining of an injury caused by a state-court judgment and specifically seeking district court review and rejection of that judgment, his federal claims are not barred by the *Rooker-Feldman* doctrine. *See Exxon*, 544 U.S. at 284.

### III.

The defendants urge us to consider numerous alternative grounds for affirming the district court's judgment dismissing this case. "It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Evaluating the alternative grounds presented by the defendants would require extensive analysis of issues never addressed by the district court, which is better positioned to consider them in the first instance. In keeping with our general practice, we decline to resolve these arguments as an initial matter on appeal but remand the case to the district court for further proceedings consistent with this opinion. *See*

11

*Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 515 (4th Cir. 2015);

*French v. Assurance Co. of America*, 448 F.3d 693, 707 (4th Cir. 2006).

*REVERSED AND REMANDED*