**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-2245**

TRACY SEMPOWICH,

      Plaintiff – Appellant,

  v.

TACTILE SYSTEMS TECHNOLOGY, INC., d/b/a Tactile Medical,

      Defendant – Appellee,

------------------------------

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Amicus Supporting Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Dever III, District Judge. (5:18-cv-00488-D)

Argued: October 27, 2021                    Decided: December 3, 2021

Before WILKINSON, NIEMEYER, and MOTZ, Circuit Judges.

Vacated and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

**ARGUED:** Kathryn F. Abernethy, NOBLE LAW FIRM, PLLC, Chapel Hill, North Carolina, for Appellant. Julie Loraine Gantz, EQUAL EMPLOYMENT OPPORTUNITY

COMMISSION, Washington, D.C., for Amicus Curiae. Kristin Berger Parker, STINSON LLP, Minneapolis, Minnesota, for Appellee. **ON BRIEF:** Carroll Theresa Wright, STINSON LLP, Minneapolis, Minnesota; Theresa Sprain, Jonathon D. Townsend, WOMBLE BOND DICKINSON (US) LLP, Raleigh, North Carolina, for Appellee. Sharon Fast Gustafson, General Counsel, Jennifer S. Goldstein, Associate General Counsel, Elizabeth E. Theran, Assistant General Counsel, Office of General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

———————

DIANA GRIBBON MOTZ, Circuit Judge:

This appeal arises from the district court's grant of summary judgment to Tactile Systems Technology, Inc. on former employee Tracy Sempowich's discrimination, retaliation, and Equal Pay Act claims. Because the court applied an incorrect legal standard to the Equal Pay Act claim and erred in holding that there are no genuine issues of material fact precluding summary judgment on the other claims, we must vacate its judgment and remand for further proceedings consistent with this opinion.[1]

## I.

## A.

Tactile, a medical device company, sells compression devices to treat chronic swelling and wounds. In 2007, Tactile hired Tracy Sempowich — a woman — as a field sales employee, a position known at the company as a "product specialist." Sempowich briefly left full-time employment in 2009 but continued to work with Tactile as an independent contractor during that time. In 2010, Tactile rehired her as a full-time product specialist and subsequently promoted her to a senior product specialist.

Four years later, Tactile again promoted Sempowich — then forty-nine years old — to be the regional sales manager for the Mid-Atlantic region. In this role, Sempowich

---

[1] In granting Tactile's motion for summary judgment, the district court also granted Tactile's motion to strike Sempowich's proffered expert testimony and dismissed as moot Sempowich's own motion for partial summary judgment and motion to strike Tactile's responsive statement of material facts. As discussed below, we vacate the grant of Tactile's motion to strike Sempowich's proffered expert testimony and remand for further proceedings consistent with this opinion. On remand, the district court should also reconsider and decide Sempowich's motions that it dismissed as moot and any motions that may otherwise be revived.

supervised a sales team of up to fifteen people for a region then consisting of Maryland, North Carolina, part of South Carolina, and Virginia. Later that year, Tactile hired Greg Seeling — a forty-six-year-old man — to be the regional sales manager for the Southern region, consisting of Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, part of South Carolina, Tennessee, and West Virginia.

B.

The above facts are undisputed, but the record is rife with other facts that are in serious dispute. The disputed facts relate primarily to Sempowich's performance as a regional sales manager, about which Tactile and Sempowich have offered starkly different testimony and documentary evidence.

On one hand, Tactile maintains that Sempowich failed to meet the company's performance goals. Tactile's Senior Vice President of Sales, Bryan Rishe, testified that Sempowich oversaw lagging year-over-year growth, high employee turnover, and slow hiring in her region, and that there was a "lack of professional development of [her] region's] personnel." He further testified that these issues "had challenged the region since 2015" and that he had discussed them with Sempowich "on a number of occasions" and "tried to assist her with recruitment," to no avail. Tactile also points out that Sempowich stated on a call with Rishe that she "couldn't grow the way" that he was "measuring [her] on from last year with the fact that there was a lot of things that were out of [her] control from a business perspective." And in a business action plan, Sempowich acknowledged that her region's "biggest hur[d]le has been headcount and the ability for expansion," noting that hers was "the only tenured region that has not maximized expansion

4

opportunities or had increase of territory." Rishe testified that he and the company's CEO "concluded [that] a change of management was needed to turn around performance of the Mid-Atlantic Region."

On the other hand, Sempowich testified and offered documentary evidence showing that Tactile consistently viewed her as a top performer. She testified that Vice President Rishe never "explicitly" told her she had "performance deficiencies" that she needed to work on to keep her position. In fact, she offered documentary evidence that in two of Tactile's recent annual evaluations of her performance, Rishe listed her as having "[e]xceptional [s]trengths" in people development, team building, leadership, and planning, organization, and execution skills. Sempowich also testified and offered documentary evidence that Tactile repeatedly gave her awards, including a Regional Manager Sales Leadership Award three years in a row for exceeding the revenue plan in her region and, at the national sales meeting on January 21–24, 2018, an award for Sustained Excellence (an honor that, according to Sempowich, no other current regional sales manager received at that time). In addition, she testified that in January 2018, Tactile informed her that it would give her a discretionary equity grant of $40,000 and a $10,000 salary raise effective February 1, 2018.

Moreover, Sempowich offered evidence that Tactile viewed her not only as a top performer but also as a better performer than Seeling. In their 2015 evaluations, Tactile rated Sempowich as a Key Contributor (the third-highest possible rating) and Seeling only as a Contributor (the fourth-highest); and in their 2016 evaluations, Tactile rated

5

Sempowich as a Major Contributor (the second-highest) and Seeling only as a Key Contributor (the third-highest).

Nevertheless, on February 12, 2018, Rishe informed Sempowich that she would no longer be a regional sales manager, that Tactile would reassign her region to Seeling, and that Seeling would be promoted to area director (a step above regional sales manager). Tactile offered Sempowich a newly created position as a market development manager for its "head and neck" business, in which she would retain the same base salary. But Sempowich viewed this offer as a demotion — she saw the new position "more like a sales job" with only a nominal title as manager, especially because she would no longer have any employees reporting directly to her. And the formal offer letter that Tactile later provided did not mention a plan that would allow her to earn incentive compensation after the expiration of a six-month guarantee.

Ten days later — on February 22, 2018 — Sempowich submitted a complaint to Tactile's Human Resources department, alleging that Tactile had discriminated against her on the basis of sex and age. On March 23, Tactile's counsel informed Sempowich's counsel that if she failed to accept the offer to become a market development manager, her employment with Tactile would cease effective March 30. Sempowich did not accept, and on March 30 her employment ended.

Sempowich then sued Tactile in state court, alleging: (1) Title VII disparate treatment on the basis of sex and sex-plus-age; (2) wrongful termination under North Carolina state law; (3) Title VII retaliation; and (4) a violation of the Equal Pay Act. Tactile removed the case to federal court. Once in federal court, Tactile moved for summary

6

judgment on each of Sempowich's claims. The district court granted the motion. Sempowich then noted a timely appeal to this court.

We review a district court's grant of summary judgment de novo, "applying the same legal standards as the district court and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020). Of course, summary judgment is appropriate *only* if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

II.

To survive a motion for summary judgment on a Title VII disparate treatment claim, a plaintiff must either proceed under the mixed-motive framework or the *McDonnell Douglas* burden-shifting framework. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 206 n.4 (4th Cir. 2019); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, the district court held that Sempowich failed to present the direct evidence required to proceed under the mixed-motive framework, a contention that Sempowich has not challenged on appeal. Accordingly, the court analyzed her claims under the *McDonnell Douglas* burden-shifting framework.

Under the burden-shifting framework, a plaintiff must first offer a prima facie case. *Lettieri v. Equant*, 478 F.3d 640, 646 (4th Cir. 2007). To do so, a plaintiff must show that (1) she is a member of a protected class; (2) her employer took an adverse action against her; (3) she had been fulfilling her employer's legitimate expectations at the time of the adverse action; and (4) the adverse action occurred under circumstances that raise a

7

reasonable inference of unlawful discrimination, including because the employer left open the position or replaced the plaintiff with someone outside the protected class. *Id.*; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 n.8 (4th Cir. 2020). Once a plaintiff makes out a prima facie case, the burden shifts to the employer to put forth a nondiscriminatory explanation for its actions. *Lettieri*, 478 F.3d at 646. If the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation was "actually a pretext for discrimination." *Id.* (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)).

The district court held that Sempowich failed to make out a prima facie case because she was not fulfilling Tactile's legitimate expectations at the time the company reassigned her. It then held that, even if she had made out a prima facie case, Tactile had put forth a nondiscriminatory explanation for reassigning her, and no rational jury could find that Tactile's explanation was a pretext for discrimination.

A.

On Sempowich's prima facie case, the only factor at issue before this court is whether Sempowich was fulfilling Tactile's legitimate expectations at the time it took an adverse action against her. To satisfy this factor, a plaintiff need not "show that [s]he was a perfect or model employee. Rather, a plaintiff must show only that [s]he was qualified for the job and that [s]he was meeting [her] employer's legitimate expectations." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019).

Tactile asserts that we may solely consider the "perception of the [employer]" on this factor, "not the self-assessment of the plaintiff," and that "an employer is free to set its

8

own performance standards." Br. of Appellee at 21–22 (first quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000); then quoting *Beall v. Abbott Lab'ys*, 130 F.3d 614, 619 (4th Cir. 1997)).   It is not clear that Tactile is correct — although we have held that we must focus on the employer's perception in the context of the *pretext* stage, we have not so held with respect to a plaintiff's prima facie case.  *See, e.g.*, *Hawkins*, 203 F.3d at 279–80; *Beall*, 130 F.3d at 619–20; *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).  But even assuming that we must focus on just the employer's perception at the prima facie stage, a plaintiff may still introduce "evidence that demonstrates (or at least creates a question of fact) that the proffered 'expectation' is not, in fact, legitimate at all." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 517 (4th Cir. 2006).

Viewing the evidence in the light most favorable to Sempowich, there is an issue of material fact as to whether Tactile's asserted expectations were legitimate or genuine. Sempowich presented substantial evidence that they were not.  If an employer genuinely believed that one of its employees was performing poorly on metrics the employer perceives as critical (as Tactile claims here), it seems likely that it would at the very least not rate the employee's performance highly or give her awards, a salary raise, or an equity grant.  And yet there is evidence that Tactile (1) consistently rated Sempowich's overall performance highly (and notably, higher than the employee who it reassigned to her position); (2) repeatedly gave her awards, including one for Sustained Excellence three weeks before it told her that it would reassign her position; (3) told her that it would give her a salary raise three weeks before it told her that it would reassign her position; and

9

(4) gave her a discretionary equity grant twelve days before it told her that it would reassign her position.

We have previously held that similar evidence was sufficient to survive summary judgment. In *Haynes v. Waste Connections*, we held that a plaintiff had "raise[d] the reasonable inference . . . that he was performing at a satisfactory level" because there was evidence that the employer had given the plaintiff bonuses for the period in question and told him "mere weeks before his termination" that "everything looks good" and that he had "nothing to worry about." 922 F.3d at 225. As in *Haynes*, there is evidence that Tactile signaled to Sempowich that it viewed her overall performance positively.

Tactile argues that here we cannot consider the performance evaluations, awards, salary raise, or equity grant because they relate to Sempowich's performance *prior* to the time it reassigned her. But some of Sempowich's evidence relates to events that occurred three weeks or even *twelve days* before Tactile informed her of the reassignment. And the two annual evaluations that Sempowich points to are Tactile's most recent annual evaluations of her; not only is there no more-recent negative annual evaluation for us to consider, but there is no more-recent annual evaluation *at all*. Somewhat inexplicably, Vice President Rishe nevertheless testified that he believed Sempowich's supposed weaknesses had been apparent "since 2015." Given the awards, salary raise, and equity grant that Tactile has given Sempowich since 2015, a reasonable factfinder could find this testimony not credible. And if Tactile asserts that it reassigned Sempowich's position due to weaknesses she supposedly demonstrated throughout most of her tenure, it cannot

10

simultaneously argue that the court should ignore evidence about her performance during that same period.

This does not mean that Sempowich is entitled to summary judgment or even that a factfinder will ultimately find in her favor on the disparate treatment claims. Our holding is simple — a court cannot grant a party summary judgment when there are genuine issues of material fact, and here the record reveals factual disputes as to one of the key elements of Sempowich's prima facie case.

B.

The record is similarly replete with genuine issues of material fact that go to the heart of the pretext issue. The district court erred in analyzing pretext not only by failing to account for those disputes but also by incorrectly applying the same-actor inference.[2]

First, the district court erred in holding that there is no genuine issue of material fact as to pretext. "[T]o show pretext, a plaintiff may show that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on

---

[2] Sempowich also argues that the district court incorrectly applied the pretext-plus standard that the Supreme Court abrogated in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). In *Reeves*, the Supreme Court held that "[i]n appropriate circumstances, the trier of fact can reasonably infer" pretext "from the falsity of the [employer's] explanation," but that there may be instances in which such evidence is insufficient, for example, "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision." *Id.* at 147–48. The record is unclear as to whether the district court failed to follow *Reeves*. But regardless, the district court erred in holding that Sempowich could not rely solely on the falsity of Tactile's articulated explanation to show pretext. This is so because this is not a case in which "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision." *Id.* at 148. As a result, we need not address other evidence that Sempowich proffers to attempt to show a discriminatory motive.

11

mistakes of fact." *Haynes*, 922 F.3d at 225. "Once the plaintiff offers such circumstantial evidence, the case must be decided by a trier of fact and cannot be resolved on summary judgment." *Id.* Here, Sempowich has introduced a good deal of evidence suggesting that Tactile's explanations for its decisions were false or inconsistent over time. Much of this evidence has already been discussed above in considering Sempowich's prima facie case. But she has also introduced other evidence that supports her assertion of pretext. For example, the fact that Tactile replaced her with Seeling is certainly evidence of pretext. This is so because a jury might well conclude it unlikely that an employer who reassigned an employee solely because it believed that she performed poorly would replace her with an employee whose performance it *consistently rated as worse*.

Sempowich has also introduced evidence that challenges the accuracy of the statistics Tactile used to measure its chosen performance standards. Sempowich testified that Tactile removed Maryland and part of Virginia from her region in January 2017, even though she had previously told Vice President Rishe that "most of the Region's significant sales growth over the next two years would likely come from [those] territories." And yet Tactile's year-over-year growth statistics may have failed to account for this external factor. *See Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005) (observing, in a different statutory context, that a rational jury could find that by reducing an employee's sales territory and increasing her quotas, the employer's actions "set her up for the failures that he later used to make the case for her termination"). The same logic applies here — an employer may be free to choose its own performance standards, but it cannot measure those

12

standards with distorted data that fails to account for factors over which the plaintiff had no control.[3]

Tactile argues that none of this evidence shows that its stated reasons were false or inconsistent, but rather merely reflects that Sempowich disagrees with the usefulness of its chosen performance standards. Tactile points out that in *Hawkins v. PepsiCo, Inc.*, we held that a plaintiff must offer evidence that an employer's assessment is "dishonest or not the real reason for her termination," rather than merely "dispute[] the merits of [the employer's] evaluations." 203 F.3d at 280. It is true that courts must defer to the company's business judgment with regard to legitimate criteria it chooses to measure successful employee performance. *Id.* We are not free to substitute criteria of our own. But Sempowich has done more than challenge the criteria or merits of Tactile's evaluations. Sempowich has done what the plaintiff in *Hawkins* failed to do — "supply evidence that [*her employer*] actually believed her performance was good." *Id.* at 279 (emphasis added). This evidence is the employer's own words and actions — the

---

[3] Sempowich also offered an expert report, and later a supplemental declaration, by a certified public accountant who "investigate[d] what is actually being measured by" Tactile's year-over-year growth statistics. The district court excluded both the report and declaration, holding that the report was not relevant and that Sempowich had not previously disclosed the opinions laid out in the declaration. The court abused its discretion in doing so. The report is clearly relevant because it could help a factfinder understand the accuracy of Tactile's statistics — in the report, the expert stated that Tactile's statistics "did not isolate and track any particular action over which a Regional Sales Manager could reasonably be expected to exert control." And Sempowich did previously disclose the opinions in the declaration by outlining them in the earlier report, in which the expert "opine[d] on whether Tactile's year-over-year growth statistics are reproducible and statistically valid" by stating that, "[d]espite working with several different types of reports generated by Tactile, [she] was unable to reproduce the statistics shown in Exhibit 38."

performance ratings, awards, salary raise, and equity grant. Each of these pieces of evidence indicates that Tactile not only thought that Sempowich was performing satisfactorily, but that her performance was of such a high quality that it deserved repeated praise.

The district court also erred in applying the same-actor inference to dispose of Sempowich's claim. Under the same-actor inference, if the plaintiff's "hirer and the firer are the same individual and the termination of employment occurs within a *relatively short time span* following the hiring, a strong inference exists that discrimination was not a determining factor." *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) (emphasis added). But Rishe did not reassign Sempowich "within a relatively short time span" after he rehired her — far from it. In *Proud*, the time span was less than six months. *Id.* at 798. Here, Rishe reassigned Sempowich approximately *eight years* after he rehired her and four years after he promoted her. Moreover, there is a genuine issue of material fact as to whether Rishe rehired and promoted Sempowich under protest: although Rishe ultimately approved rehiring Sempowich, she testified that he told her that he was "not in favor" of doing so. And when Rishe learned that Sempowich wanted to be promoted to regional sales manager, he told her that he "didn't think [she] wanted to get into management." Under these circumstances, the same-actor inference cannot support a grant of summary judgment to the defendant.

Because the record is replete with genuine issues of material fact as to both the prima facie case and pretext, we vacate the grant of summary judgment on the disparate treatment claims and remand for further proceedings consistent with this opinion.[4]

III.

Sempowich also claimed that Tactile violated Title VII by retaliating against her for submitting her discrimination complaint. To establish a prima facie case of retaliation under the burden-shifting framework, a plaintiff must show: "(i) 'that [she] engaged in protected activity,' (ii) 'that [her employer] took adverse action against [her],' and (iii) 'that a causal relationship existed between the protected activity and the adverse employment activity.'" *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (alterations in original) (quoting *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)). The burden then shifts to the employer to demonstrate that "its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Id.* If the employer does so, the burden shifts back to the plaintiff to show that "the employer's purported nonretaliatory reasons 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Hill*, 354 F.3d at 285).

---

[4] The district court also granted Tactile's motion for summary judgment on Sempowich's state law wrongful termination claim "for the same reason" as her Title VII disparate treatment claims. Because we vacate the grant of summary judgment on the Title VII disparate treatment claims, we also vacate the district court's holding as to the state law wrongful termination claim and remand for further proceedings consistent with this opinion. We need not reach aspects of the state law claim that the district court did not address. *See Hulsey v. Cisa*, 947 F.3d 246, 252 (4th Cir. 2020) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below," especially if doing so "would require extensive analysis of issues never addressed by the district court." (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976))).

15

As to the prima facie case, the district court assumed without deciding that Sempowich engaged in protected activity and that Tactile took an adverse action against her. But it then held that no rational jury could find that a causal relationship existed, reasoning that (1) temporal proximity alone cannot establish a causal relationship; and (2) no temporal proximity existed in Sempowich's case. The court erred on both counts.

First, the court erred by holding that temporal proximity alone cannot establish a causal relationship. We have made abundantly clear that temporal proximity suffices to show a causal relationship. We explained this in *Strothers v. City of Laurel*, 895 F.3d 317 (4th Cir. 2018). A plaintiff may establish a causal relationship "simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee *soon after* becoming aware of such activity." *Id.* at 336 (emphasis added).

Second, the district court erred by holding that there was not temporal proximity in Sempowich's case. The court reasoned that, because Vice President Rishe told Sempowich on February 12 that Tactile would reassign her region, and Sempowich did not submit her internal discrimination complaint until February 22, Tactile's adverse actions could not have been *caused* by Sempowich's internal complaint. But there is a genuine issue of material fact as to whether Rishe made clear on February 12 that her employment with Tactile would end if she did not accept the reassignment. It was not until March 23 — about a month after Sempowich submitted her internal complaint — that Tactile stated that, if she did not accept the offer of reassignment, her "employment with Tactile [would] end effective March 30."

16

Tactile relies largely on *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299 (4th Cir. 2006), to assert that there is no temporal proximity. In that case, we held that, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Id.* at 309 (quoting *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)). But in Sempowich's case, the adverse actions were far from "gradual"; nor did they begin "well before" she engaged in protected activity. A reasonable factfinder could find that after Sempowich submitted an internal complaint, Tactile decided to take the more drastic approach of telling her that her employment would end if she failed to accept the reassignment offer.

IV.

Unlike her Title VII claims, Sempowich's final claim — an asserted violation of the Equal Pay Act — does not turn on whether there was a genuine issue of material fact. On the Equal Pay Act claim, there are few, if any, material facts in dispute. Rather, the claim turns on the appropriate legal standard for determining whether an employer has violated the Act.

To establish a prima facie case of an Equal Pay Act violation, a plaintiff must demonstrate that "(1) the defendant-employer paid different wages to an employee of the opposite sex (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions." *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018).

17

In Sempowich's case, the district court assumed without deciding that Sempowich had demonstrated the second and third factors of her prima facie case. But it then held that Sempowich had failed to demonstrate the first factor, even though neither party disputes that, in 2015, 2016, and 2017, Tactile paid Seeling a higher annual base salary than Sempowich. The court reasoned that, in 2016 and 2017, Sempowich earned more in sales commissions than Seeling, such that when combining their salaries and commissions, Sempowich earned more in total wages than Seeling in each of those two years.

This dispute thus centers on the proper metric for determining wage discrimination under the Equal Pay Act. Sempowich argues that the proper metric is the *rate* at which an employer pays the plaintiff. Amicus the Equal Employment Opportunity Commission (EEOC) agrees. In contrast, Tactile argues that the proper metric is the employee's *total wages*.

The text of the Equal Pay Act unambiguously states that an employer may not "discriminate . . . between employees on the basis of sex by paying wages to employees . . . *at a rate* less than the *rate* at which he pays wages to employees of the opposite sex." 29 U.S.C. § 206(d)(1) (emphasis added). This critical portion of the statute says nothing about total wages; it places all the emphasis on wage *rates*. As a result, we need not even

decide whether we should defer to the EEOC's interpretation of the statute — the statute itself makes clear that wage rate is the proper metric.[5]

The district court incorrectly stated that total wages is the proper metric under the regulations. This error apparently arose from a misreading of the EEOC's definition of the term "wages." The regulations define "wages" as including "all forms of compensation . . . whether called wages, salary, profit sharing, expense account, monthly minimum, bonus . . . or some other name." 29 C.F.R. § 1620.10. As a result, the district court reasoned that "wages" must include commissions, and thus that the proper metric is to compare total wages. But this definition is beside the point. The term "wages" includes commissions because, just as with salary, an employer could not pay commissions to a female employee at a lower *rate* than a similarly situated male employee. This does not mean that all types of remuneration should be combined into one lump sum when comparing the earnings of a male and female employee.

Rather, the statute and the EEOC's regulations make clear that an employer violates the Equal Pay Act if it pays female employees at a *rate* less than that of similarly situated male employees. A hypothetical illustrates the point: "As a matter of common sense, total remuneration cannot be the proper point of comparison. If it were, an employer who pays

---

[5] We note, however, that the EEOC's regulations reach the same conclusion. Under those regulations, "an employer would be prohibited from paying higher hourly rates to all employees of one sex and then attempting to equalize the differential by periodically paying employees of the opposite sex a bonus." 29 C.F.R. § 1620.19. Although this regulation refers to bonuses rather than commissions, the logic is the same: an employer may not pay a female employee a lower salary than a similarly situated male employee and then hope to avoid liability if the female employee works hard enough to earn extra money through commissions or bonuses.

a woman $10 per hour and a man $20 per hour would not violate the [Equal Pay Act] . . . as long as the woman negated the obvious disparity by working twice as many hours." *Ebbert v. Nassau County*, No. 5 Civ. 5445, 2009 WL 935812, at *3 (E.D.N.Y. Mar. 31, 2009).

V.

For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*