**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-2328

ASHLEY NICOLE NOONAN, f/k/a Ashley Culpepper,

Plaintiff - Appellant,

v.

CONSOLIDATED SHOE COMPANY, INC.,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. Norman K. Moon, Senior District Judge. (6:20-cv-00068-NKM-RSB)

Argued: January 24, 2023                    Decided: October 19, 2023

Before HARRIS, RICHARDSON, and RUSHING, Circuit Judges.

Affirmed by published opinion. Judge Richardson wrote the opinion, in which Judge Harris and Judge Rushing joined.

**ARGUED:** Johnneal M. White, GLENN ROBINSON CATHEY MEMMER & SKAFF PLC, Roanoke, Virginia, for Appellant. Monica Taylor Monday, GENTRY LOCKE, Roanoke, Virginia, for Appellee. **ON BRIEF:** Hunter D. Weikel, GLENN ROBINSON CATHEY MEMMER & SKAFF PLC, Roanoke, Virginia, for Appellant. Catherine J. Huff, GENTRY LOCKE, Roanoke, Virginia, for Appellee.

RICHARDSON, Circuit Judge:

Ashley Noonan claims that she suffered sex-based wage discrimination while working at Consolidated Shoe Company, and, what's more, was retaliated against when she complained about it. Before the district court, she sought to show wage discrimination by comparing her wages to those of Matt Wiese, a male co-worker at Consolidated Shoe. But Wiese, a graphic designer, had a meaningfully different role at the company than Noonan, a content creator and part-time photographer. Because the two did not perform similar jobs, Noonan could not rely on Wiese as a comparator to show wage discrimination. So the district court granted summary judgment to Consolidated Shoe.

Noonan appealed but dropped her comparator argument. She instead argues that her complaint also included a broader theory that women at Consolidated Shoe were categorically paid less than men. This, she claims, means that she doesn't need a comparator to create an inference of discrimination because she can prove that Consolidated Shoe would have paid him more than her *if* he existed. What evidence does Noonan have for this claim? According to her, statistical evidence about Consolidated Shoe's pay practices. But what she really has is an email from her boss showing, at most, that—based on some back-of-the-envelope math—among the four members of Noonan's department at work, only the man was paid at an alleged market rate. And none of the women performed a similar job that would permit inferring discrimination from the pay of these four people. So the district court properly granted summary judgment and we affirm.

2

## I.     Background

Consolidated Shoe is a shoe distributor based in Lynchburg, Virginia.  In 2016, the company hired Noonan as Content Marketing Coordinator.  Noonan had the chops for the job.  In college, she majored in communications and minored in public relations and advertising.  After college, she held marketing-related positions at several other firms.  When Consolidated Shoe hired Noonan, she asked for a starting salary of $46,000 but eventually agreed to $39,000.

Right before Noonan was hired, Consolidated Shoe's graphic designer, Kristina Petrick, left the job.  So, with a co-worker's assistance, Noonan handled some of the graphic-design responsibilities when she came aboard.  Then when the co-worker also left, Noonan alone shouldered the graphic-design responsibilities—an awkward fit given that she had little relevant experience.  Consolidated Shoe made do with Noonan working as graphic designer until Petrick returned in 2018.  But, even then, Noonan retained some graphic-design responsibilities and was given the title of Graphic Designer in July 2018.

Not long after her return, Petrick was promoted to Creative Director and tasked with running the marketing department.  So Consolidated Shoe was once again without an experienced graphic designer.  It went on the hunt for one and settled on Matt Wiese.  He had all the bona fides: a degree in graphic design and impressive work experience as a graphic designer for recognizable names like Sunday Night Football.  He was offered the position of Senior Graphic Designer with a starting salary of $45,000.  But after Weise forwarded a paystub showing a $66,430 salary at his then-current position, Consolidated Shoe countered with $68,000, and he accepted.

3

Around the same time that Wiese was hired, Noonan asked for a pay raise. She was rebuffed but given a new title: Senior Photographer and PR Specialist. Also around the same time, Petrick sent an email "petitioning" Consolidated Shoe's finance department for salary bumps for her employees in the marketing department. In the email, Petrick listed each employee's current pay compared to what she terms a "local industry standard" for generic jobs that she decided roughly matched the different jobs in the marketing department. J.A. 164. She made up the "local industry standard" pay from websites that conglomerate publicly available salary information, such as Glassdoor.com and Salary.com. And compared to her made-up standard, she argued that the three female workers in Consolidated Shoe's marketing department—including Petrick herself—were paid well below the "local industry standard." J.A. 164. So Petrick requested that the three women—including she—receive a raise. In contrast, Petrick's "local industry standard" for the only man in the department, Wiese, showed that he made very close to (but slightly below) the "local industry standard." Wiese, as you recall, had just started, and Petrick did not request that he receive a raise. All her requested raises were denied.

Later, in 2019, a co-worker at Consolidated Shoe found Wiese's paystub and shared it with Noonan. Noonan was shocked by what she saw—Wiese made considerably more than she did. Armed with this evidence, she confronted Petrick with her belief that she was being subjected to sex discrimination in compensation and asked for a raise. Things didn't go well. Not only did Petrick refuse to raise her pay, but Petrick also admonished Noonan

4

that "it was a fireable offense to know another employee's salary."[1]  J.A. 1299.  And, for the icing on the cake, Petrick insulted Noonan by asking her whether money was the most important thing to her.

This conversation left Consolidated Shoe with some cleaning up to do.  As for the suggestion that Noonan had committed a fireable offense, Melanie Christmas, Consolidated Shoe's Human Resources Director, clarified to Noonan that she, in fact, could not be fired for what she did.[2]  And Petrick apologized for the remark.  As for the allegation of wage-based sex discrimination, that would take more than an apology.  The company took the allegation seriously.  The CEO got involved and ordered an internal investigation.  The investigation determined that there was no sex discrimination in compensation; Wiese was paid more because of his greater job duties, experience, and skills.

Noonan had raised the pay issue in December 2019.  So by the time the weeks-long investigation was winding down, something else was winding up:  the COVID-19 pandemic.  In the following months, things changed considerably in Consolidated Shoe's

---

[1] Petrick recalls things differently.  She testified that she told Noonan:  "[W]hoever told you [Wiese's salary] should be fired."  J.A. 911–12.  But, with conflicting testimony about what was said, at this stage of the case, we take Noonan's version of the story.  *See Walker v. Donahoe*, 3 F.4th 676, 682 (4th Cir. 2021).

[2] The clarification was apparently unnecessary because Noonan told Petrick during the conversation that knowing a co-worker's pay was not a fireable offense.  On appeal, the parties agree that Petrick's statement was inaccurate—Noonan did not commit a fireable offense.  Still, Consolidated Shoe's employee handbook did say:  "An employee's salary or rate of pay is  a strictly confidential matter between the employee and CSC and must not be discussed with co-workers."  J.A. 165.  Given the rule's reference to confidentiality, it might be more naturally read to prohibit discussing one's own pay with co-workers.  But it could be read to technically prohibit Noonan's conduct.

5

marketing department. Some of those changes were the clear result of the pandemic and consequent economic conditions. But Noonan flags other changes as retaliation for her sex-discrimination accusation. More specifically, she claims that, in retaliation for her complaints, Consolidated Shoe took some of Noonan's job responsibilities away from her.

Eventually, Consolidated Shoe let both Noonan and Wiese go in June 2020. Noonan doesn't challenge her termination as retaliatory, but she does claim that Consolidated Shoe retaliated by withholding a letter of recommendation after letting her go. She's right that Consolidated Shoe never provided her a recommendation letter. On their way out from the company, both Noonan and Wiese were offered severance agreements, which included a letter of recommendation as a perk. Wiese accepted the severance agreement. And he received a letter of recommendation. Noonan rejected the severance agreement. And she did not receive a letter of recommendation.

Noonan felt she was mistreated. She disagreed with the outcome of Consolidated Shoe's internal investigation and viewed the pay disparity as illegal sex discrimination. She also thought that she was retaliated against for raising her concerns with Petrick. So she sued, alleging: (1) wage discrimination under Title VII, (2) wage discrimination under the Equal Pay Act, (3) retaliation under Title VII, and (4) retaliation under the Equal Pay Act. Consolidated Shoe moved for summary judgment, primarily arguing that Wiese was not a proper comparator for the wage-discrimination claims and that Noonan could not show that she suffered any materially adverse retaliation. The district court agreed and granted summary judgment on all claims.

6

## II.      Discussion

We review the district court's grant of summary judgment de novo. *Richardson v. Clarke*, 52 F.4th 614, 618 (4th Cir. 2022). To survive summary judgment, a plaintiff must point to "evidence on which the jury could reasonably find for" her. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Noonan has pointed to no such evidence, so we affirm the grant of summary judgment to Consolidated Shoe.

### A.      Title VII discrimination

Title VII says that an employer cannot "discriminate against any individual with respect to [her] compensation . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff may build a case through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] This well-trodden path allows a plaintiff to establish an inference of discrimination by making out a prima facie case. In pay-disparity cases, the prima facie case requires a plaintiff to establish that "(1) she is a member of a protected class, (2) she was performing her job satisfactorily, (3) an adverse employment action occurred, and (4) the circumstances suggest an unlawfully discriminatory motive." *Spencer*, 919 F.3d at 207. Typically, in such cases, the circumstance that "suggest[s] an unlawfully discriminatory motive," *id.*, is the existence of a male comparator. That's because, in general, the most obvious reason for

---

[3] Of course, a Title VII plaintiff need not rely on the burden-shifting framework. *See Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019). She can also, like a plaintiff in any other type of case, present "direct or circumstantial evidence" to prove her claim. *Id.* When that's the case, we "utilize ordinary principles of proof" and ask whether the plaintiff presented evidence of "sufficient probative force" to allow a jury to find for her. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999).

7

pay disparity is that the employer values one job less than it does another. But if there's a male comparator who performs a similar job to the plaintiff yet is paid more, then we may infer that sex discrimination is potentially the reason the plaintiff was paid less. So then the burden shifts to the employer to provide a different explanation.

In her complaint, and before the district court, Noonan relied on a male comparator, Matt Wiese, who was the Senior Graphic Designer. She argued that he performed a similar job but was paid more than she was paid. But the district court rejected that argument, finding that Wiese did not perform a similar job. Now, on appeal, Noonan has abandoned any argument that Wiese's job was similar. And rightfully so—Wiese had a distinct job. *See id.* (noting that finding two jobs are "similar" under Title VII requires considering "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision"). Remember, the value of a similarly situated comparator comes from the fact that we can assess disparate treatment after eliminating the obvious explanation for the disparity. So where the comparator performs a dissimilar job, no comparative inference of discrimination can be drawn. *See id.* at 207–08.

Of course, Noonan doesn't need a male comparator to establish a prima facie case of pay discrimination. *See Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 720 (4th Cir. 2013) ("This is not to say that comparator evidence is the final answer in the discrimination

law."). But she must still present evidence that reasonably creates an inference of an unlawfully discriminatory motive to shift the burden to Consolidated Shoe.

In an attempt to create this inference, Noonan points out that—based on her boss's email—not only did Wiese make more money than *she* made, but he was also paid at the "local industry standard," while the female employees in the marketing department were paid below that standard. From this, she argues we can infer that the company discriminated against women.[4] In essence, Noonan argues that the so-called "local industry standard" creates some objective value of what marketing-department work was worth. And since she and two other female employees were paid less than this standard, whereas Wiese, the only male in the department, was not, we should infer discriminatory animus.[5]

---

[4] Consolidated Shoe argues that Noonan failed to plead and present below the theory that she now presses on appeal. That's a close question. The substantive Title VII allegations in her complaint focused on Wiese. Yet Noonan also generically pleaded that Consolidated Shoe "violated Title VII . . . when it subjected [her] to disparate treatment . . . based on her sex." J.A. 7; *see* J.A. 24 (Consolidated Shoe "discriminated against [Noonan] based on her sex when it paid a male employee significantly higher wages . . . ."). And she pleaded specific facts supporting this theory of liability. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In any event, because Noonan's claim fails even if she did adequately allege such a theory, we need not decide whether the claim was preserved.

[5] Noonan inaccurately claims that the Supreme Court in *Washington County v. Gunther*, 452 U.S. 161 (1981), supported her theory by blessing an inference of discrimination based on paying women below a market rate while paying men at the market rate. Not so. In *Gunther*, the Supreme Court wrestled with the "narrow question" of the import of an amendment to Title VII. *Id.* at 166. The amendment could have been read solely as incorporating the Equal Pay Act's affirmative defenses into Title VII. Or it could have been read to also incorporate the Equal Pay Act's "equal" work standard into Title VII. The Court adopted the narrower reading—the amendment only incorporated the Equal Pay Act's affirmative defenses. Relevant here, the Court was careful to explicitly note that it was "not called upon in this case to decide whether respondents have stated a prima facie

9

But those other employees didn't perform jobs similar to Wiese either. *See Spencer*, 919 F.3d at 207. They all held different positions. *See* J.A. 1352 (Petrick worked as Creative Director and another employee, Liz McDade, worked as Social Media Coordinator). The sum here is not more than its parts. What Noonan cannot show by comparing herself to one dissimilar male employee, she can't show by comparing that same male co-worker to two other dissimilar employees either.[6] So Noonan has not satisfied her burden of raising an inference of sex discrimination.

## B.    Retaliation

Noonan claims that she was retaliated against for raising concerns about sex-based wage discrimination, in violation of Title VII and the Equal Pay Act. She alleges three retaliatory acts: (1) Petrick's threat to fire her; (2) Consolidated Shoe's reduction in her job responsibilities, particularly doing fewer photoshoots; and (3) the company's declining to provide a letter of recommendation after letting her go.

To establish a prima facie case of retaliation, Noonan must prove: "(i) that she engaged in protected activity, (ii) that her employer took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 653 (4th Cir.

---

case of sex discrimination under Title VII." *Id.* at 166 n.8. Yet Noonan relies on *Gunther* for the very reason that the Court disclaimed.

[6] Because Noonan fails to meet Title VII's similarity requirement for comparison, she necessarily fails to meet the Equal Pay Act's higher bar to show the comparable jobs were equal. *See Spencer*, 919 F.3d at 207 (noting that Title VII's "similarity" requirement demands less of plaintiffs than the Equal Pay Act's "equality" requirement).

2021) (cleaned up). The parties agree that Noonan engaged in protected activity when, armed with Wiese's paystub, she confronted Petrick with accusations of sex-based wage discrimination. Still, she hasn't pointed to evidence from which a reasonable jury could conclude she has met all three elements for any of the alleged retaliatory conduct because none of the actions she complains about were "both material and undertaken because of her complaints about salary equity." *Spencer*, 919 F.3d at 208.

First, the threat to fire her. During the conversation in which Noonan raised her concerns about wage discrimination, Petrick inaccurately told Noonan that knowing a co-worker's pay was a fireable offense under Consolidated Shoe's employee handbook. Noonan calls this a threat to fire her.[7] While threats come in many shapes and sizes, it is far from clear that Petrick's statement amounted to a threat. But even assuming Petrick's comment was in fact a threat, it is not sufficiently adverse in this context to be actionable.

---

[7] We assume that Noonan can show causation for this retaliatory conduct. But it isn't obvious. True, there is a tight temporal proximity between the protected activity and the alleged retaliatory conduct—it was in the same conversation. And temporal proximity alone can establish causation. *See Sempowich*, 19 F.4th at 654. Yet the threat itself targeted Noonan's knowledge of another employee's salary—a violation of Consolidated Shoe's policy—not Noonan's protected activity. *Compare* J.A. 1299 (Petrick's statement "that it was a fireable offense to know another employee's salary"), *with Rivera v. Rochester Genesee Reg. Trans. Auth.*, 743 F.3d 11, 26 (2d Cir. 2012) (allowing a retaliation claim to survive summary judgment where the boss threatened that the employee "could lose his job for filing complaints of discrimination"). What's more, following Noonan's conversation with Petrick, Consolidated Shoe launched an investigation of Noonan's allegation of sex discrimination. This suggests that the threat truly was aimed at Noonan's knowledge of others' salaries, not at the underlying allegation of sex discrimination. In other words, there is reason to think that if Consolidated Shoe did not have the policy, then Petrick would not have threatened to fire Noonan in this conversation. But with evidence pointing in both directions, we construe the evidence of whether the threat was *because of* Noonan's protected activity in Noonan's favor.

11

How adverse must retaliatory conduct be?  It must be "materially adverse," which means the plaintiff must show "significant" harm that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 656 (4th Cir. 2023) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 68 (2006)).  In making this determination, context matters.  As the Court explained in *Burlington Northern*, a schedule change "may make little difference to many workers but may matter enormously to a young mother with school age children"; and not including an employee on a group lunch may be a "nonactionable petty slight," but "excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might" be actionable.  548 U.S. at 69.  Considering the context of Petrick's one-off statement to Noonan, no reasonable juror would conclude that the threat was a significant harm that would have dissuaded a reasonable worker from making a charge of discrimination.

There were no "special circumstances . . . such as a unique interpersonal . . . relationship between the supervisor and employee" for us to determine that this "unrealized threat of termination" was sufficiently adverse.  *See Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005).  Instead, the circumstances show the opposite.  *First*, Petrick apologized for her statement.  *Second*, Consolidated Shoe's Human Resources Director supported Noonan in the wake of the threat.  *See Hellman v. Weisberg*, 360 F. App'x 776, 779 (9th Cir. 2009) ("Especially given [the boss's] otherwise supportive attitude, his reprimand did not rise to the level of adverse employment action.").  And *third*, instead of realizing or repeating the threat, the company—at the CEO's direction—

12

conducted a full investigation to assuage Noonan of her concerns. In that context, Petrick's isolated statement, even if understood as a threat, would not dissuade a reasonable worker from bringing a charge of discrimination.

Second, Noonan asserts that Consolidated Shoe "hollowed out" her job responsibilities after the conversation. In particular, she claims that Consolidated Shoe reduced her photography, video, and email marketing responsibilities while assigning her more writing projects. Such responsibility-stripping can qualify as adverse action. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004). Of course, the action must still be "materially adverse." *Burlington N.*, 548 U.S. at 68. And this is an objective standard, adopting the lens of a "*reasonable* employee." *Id.*

Here, Noonan says that the responsibility-stripping was materially adverse because Consolidated Shoe took away her job's most prestigious and enjoyable aspects. But the record does not support the claim that her reduced responsibilities were *objectively* more desirable or prestigious than her increased responsibilities. Unlike in *Burlington*, Noonan does not present evidence that her increased writing responsibilities were "more arduous and dirtier" than her reduced photography responsibilities. *See id.* at 71. Nor does she show that her older responsibilities required more qualifications than her newer responsibilities (and were thus more prestigious), nor that they were "objectively considered . . . better" than her newer duties. *See id.* Noonan similarly presents no evidence that her new responsibilities offered fewer "opportunities for promotion or professional development" or that she was demoted either in title or in compensation. *See James*, 368 F.3d at 376.

13

Though Noonan tries to establish prestige by saying that her new title of "Sr. Photographer" shows the prestige in photography, her own evidence undercuts that conclusion. She herself acknowledges that she had been doing photography long before she attained her new title. And she notes that an intern, not another senior employee, began to perform many of her old photography responsibilities. Since photography thus often falls within the province of low-level employees (like pre-promotion Noonan and the current intern), Noonan has not produced evidence from which a reasonable jury could conclude that Consolidated Shoe considered photography to be an objectively "prestigious" activity.

Similarly, the fact that Noonan's new balance of responsibilities was subjectively "less appealing . . . in and of itself does not constitute adverse employment action." *See id.* And this makes sense in light of the Supreme Court's admonition that this must be an objective inquiry. *See Burlington N.*, 548 U.S. at 68. Instead, Noonan must show that her new responsibilities are objectively worse than her old ones, such as when an employer replaces "easier or more agreeable" responsibilities with "more arduous duties." *Id.* at 71. Yet Noonan points us to no evidence showing that photography is somehow objectively better than writing. A jury would be left to speculate regarding that question. All she asserts is that she "really enjoyed" photography. J.A. 315. Without more, that does not create a genuine dispute of material fact as to material adversity.

Third, Consolidated Shoe did not provide Noonan a letter of recommendation after letting her go. As the district court recognized, there's a simple explanation for why: She didn't agree to the severance package, which included the recommendation letter as a perk.

14

In contrast, Wiese agreed to the severance package, and, in turn, received a letter of recommendation. But Noonan attempts to revive this act as retaliatory by claiming that, separate from her declining the severance package, she reached out to Christmas and asked for a letter of recommendation. And in her brief, she argues that Christmas had agreed to provide such a letter before company executives pressured her into not providing one. But even viewing the evidence in the light most favorable to Noonan, it does not show what she claims it does. Noonan's evidence does show that Christmas originally agreed to write her a letter. But the undisputed record reveals that Christmas agreed under the mistaken belief that Noonan had signed the severance agreement. And when she found out that Noonan had refused the agreement, she made a personal decision not to write such a letter because she didn't "feel[] comfortable doing one." J.A. 661. Consolidated Shoe, on the other hand, would have had no issue with Christmas writing Noonan a letter of recommendation had she decided to write one. The company, thus, took *no* action here, much less retaliatory action.

Accordingly, even assuming that withholding a letter of recommendation would dissuade a reasonable worker from engaging in protected activity, no reasonable jury could find the necessary "causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015).[8]

---

[8] A retaliation claim based upon an employer's failure to furnish a favorable recommendation letter may put the employer in a practical bind, at least where the employee has given some forewarning of his or her intention to file a discrimination complaint or has already done so. If, on the one hand, the employer provides a tepid recommendation or mentions the employee's discrimination claim, then the employee may use that as evidence of retaliation. *See Rutherford v. Am. Bank of Com.*, 565 F.2d 1162,

15

\*         \*         \*

To survive summary judgment, Noonan must produce evidence that would allow a jury to find that she was discriminated against in violation of Title VII. But what Noonan provided would not permit a reasonable jury to find for her. And she did not suffer any materially adverse action *because* she raised concerns about the alleged sex discrimination. Accordingly, the district court's grant of summary judgment to Consolidated Shoe is

*AFFIRMED.*

---

1163–65 (10th Cir. 1977). If, on the other hand, the employer provides an artificially positive recommendation to avoid such an outcome, then it could foreclose a potential defense in the forthcoming or ongoing litigation; the letter of recommendation will be plaintiff's "Exhibit A" that the alleged adverse employment action was not the result of poor job performance. *See Tomanovich v. Indianapolis*, 457 F.3d 656, 666 (7th Cir. 2006). Here we need not address the issue because, as explained above, the denial of the recommendation letter was Christmas's decision, not Consolidated Shoe's decision.

16