**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 24-1704

_____

CARGAIL T. DOWNER,

Plaintiff - Appellant,

v.

PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS,

Defendant - Appellee.

_____

Appeal from the United States District Court for the District of Maryland at Greenbelt. Brendan A. Hurson, District Judge.  (8:21-cv-01618-BAH)

_____

Submitted:  April 22, 2025                          Decided:  July 14, 2025

_____

Before WYNN, RICHARDSON, and BERNER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:**  Samantha Vanterpool Rucker, THE SPIGGLE LAW FIRM, Alexandria, Virginia, for Appellant.  Darryl G. McCallum, SHAWE ROSENTHAL LLP, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Cargail Downer is an HVAC mechanic employed by Prince George's County Board of Education. In June 2021, the County placed Downer on paid administrative leave after he threatened his supervisor. Downer sued, alleging race and national origin discrimination, a hostile work environment, and retaliation. The district court awarded summary judgment to the County. We affirm.

## I.    Background

Downer is a Black man and native of Guyana. He began working for Prince George's County Board of Education (the County) as an HVAC mechanic in April 2018. Beginning in late 2019, Downer filed several internal complaints alleging employment discrimination.

Downer filed his first internal complaint in October 2019, alleging that he was improperly demoted and wrongly denied overtime, training, and job assistance. Shortly after Downer filed this first internal complaint, the County's Equal Employment Opportunity Officer began investigating. A few months later, while the County's investigation was still ongoing, Downer filed a second internal complaint. This second complaint alleged that various "corrective actions" taken by Downer's supervisors amounted to harassment and retaliation and created a hostile work environment. Neither of the first two complaints mentioned race or national origin discrimination.

In August 2020, Downer filed a third internal complaint. This time, however, Downer also initiated a charge with the Equal Employment Opportunity Commission

(EEOC). Downer's third complaint concerned a confrontation with a co-worker that resulted in a change to Downer's shift assignment. Downer confronted the co-worker about that individual's refusal to wear a mask, which was a violation of the County's COVID-19 related policies. According to Downer, the co-worker responded, "the next time you say something to me about a mask I'm going to put a bullet in your f[***]ing head and get you out of here!" J.A. 544. Downer obtained a temporary peace order against the co-worker from a Maryland state court. To comply with that order, the County separated Downer and his co-worker into different shifts. The County assigned Downer to the earlier shift, which the County alleges was necessary to maintain equal numbers of specialized mechanics across shifts. In his EEOC charge, Downer alleged discrimination on the basis of race and national origin, as well as unlawful retaliation. The EEOC did not substantiate Downer's claims and issued him a right to sue letter in May 2021.

In June 2021, Downer returned to work after a three-month absence due to COVID-19. Upon his return, the County informed him that he would need to travel to job sites with co-workers rather than have a vehicle to himself. Downer previously drove alone to job sites in a County-owned vehicle. Because the number of vehicles was limited, however, it was common for County employees to be required to share vehicles.

After being told that he would need to share a vehicle, Downer confronted his supervisor, Lance Schiemer. Downer admits that he "point[ed his] finger [at Schiemer] and said, you are very vindictive, you know, and for what you have done you need to get out of this shop." J.A. 225. Schiemer reported the altercation to his supervisors, and Downer was placed on paid administrative leave on June 22, 2021.

3

On June 30, 2021, Downer filed this suit under Title VII and Section 1981, alleging race and national origin discrimination, a hostile work environment, and unlawful retaliation. He also brought claims under state and local anti-discrimination laws. In August 2023, the County filed a motion for summary judgment, which the district court granted on all claims. At the time of the county's motion for summary judgment, Downer remained on paid administrative leave. Downer appeals the grant of summary judgment, but only as to the federal claims.

## II.      Standard of Review

We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023). Thus, we "construe all facts and reasonable inferences in the light most favorable to the nonmoving party"—here, Downer—and ask whether genuine disputes of material fact preclude judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(a)). This court has emphasized that "the aim of summary judgment is not to determine the exact strength of a case and dispose of so-called weak cases, but instead to determine whether a rational jury could find in the plaintiff's favor." *Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 412 (4th Cir. 2022). For this reason, we "examine the course of a plaintiff's conduct through a panoramic lens, viewing the individual scenes in their broader context and judging the picture as a whole." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015).

III.    Analysis

Courts analyze Title VII and Section 1981 claims under the same basic framework. *See Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 n.4 (4th Cir. 2025). Title VII prohibits employers from "discharg[ing] any individual, or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Title VII also prohibits an employer from creating a hostile work environment or retaliating against an employee who engages in protected activities. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022).

A.  Race and National Origin Discrimination

A plaintiff alleging discrimination under Title VII can meet his summary judgment burden—establishing a genuine dispute of material fact—either through direct evidence, or through circumstantial evidence under the scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Wannamaker*-Amos, 126 F.4th at 255. Because Downer has offered no direct evidence of discrimination, he proceeds under the three-step *McDonnell Douglas* framework. Under this framework, a plaintiff must first make out a *prima facie* case of discrimination. *Id.* The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory justification for its allegedly discriminatory action. *Id.* If the employer carries this burden, the plaintiff then must prove by a preponderance of the evidence that the neutral reasons offered by the employer "were not

5

its true reasons, but were a pretext for discrimination." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The district court held that Downer failed to establish a *prima facie* case of discrimination. To establish a *prima facie* case, "a plaintiff must show that (1) she is a member of a protected class; (2) her employer took an adverse action against her; (3) she had been fulfilling her employer's legitimate expectations at the time of the adverse action; and (4) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 649–50 (4th Cir. 2021). The district court concluded that Downer failed to meet the second prong. According to the district court, "none of the corrective actions" taken against Downer constituted "adverse actions" for the purposes of establishing a *prima facie* case under Title VII. J.A. 560.

Though we affirm the district court's judgment, we resolve this case on different grounds. Even if some of the actions taken by the County *did* constitute "adverse actions" under the *McDonnell Douglas* burden-shifting framework, Downer still failed to meet his burden to establish a *prima facie* case. That is because none of the County's actions "occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Sempowich*, 19 F.4th at 649–50. Simply put, Downer presented zero evidence that his alleged mistreatment was based on his race or national origin. As a result, Downer did not establish the fourth prong of a *prima facie* case.

Even if Downer were able to establish a *prima facie* case, the County easily met its burden of "articulat[ing] a legitimate, nondiscriminatory reason for the adverse

6

employment action" at step two of the *McDonnell Douglas* framework. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). The County produced copious evidence that several of the actions alleged by Downer simply did not occur, as well as extensive testimony from Downer's coworkers stating that he engaged in highly disruptive workplace behavior.

Within Downer's first few months on the job, his supervisors and colleagues began raising concerns about his demeanor and work performance. In May 2018, Downer's supervisors requested an extension of Downer's probationary period, noting that he was "very confrontational and appears to be missing the basic knowledge needed to effectively troubleshoot HVAC units . . . He has been placed with numerous employees and they all have the same concerns of him being very confrontational." J.A. 547. Downer's colleagues reported that they "felt threatened" by Downer; that Downer demonstrated a "very aggressive attitude"; that his "knowledge of the HVAC field was not there and [he] would not take criticism at all." J.A. 547. One of Downer's colleagues stated, "[h]e is very argumentative toward me and his lack of knowledge in the trade makes me unwilling to work with [him]." J.A. 547.

Downer was issued numerous "corrective actions," and his performance reviews consistently noted that he needed to improve his work relationships. In June 2019, for example, Downer received a verbal warning for failure to follow his supervisor's instructions. He was issued seven additional corrective actions between June 2019 and January 2021. Because of Downer's confrontational behavior, his colleagues refused to ride in a truck with him. In Downer's April 2019 performance review, his supervisor

7

commented that he "would like to see [Downer] work on and improve his work relationship with his intimate foreman and leads. In this industry and with our equipment you will often have to ride two men to a truck and help each other service our facilities." J.A. 549.

When Downer learned that he would need to share a truck upon returning from a three-month medical leave, he confronted and threatened his supervisor. Downer concedes that he pointed his finger at his supervisor and told him "you need to get out of this shop." J.A. 225. Through these undisputed facts, the County met its burden of articulating a legitimate, non-discriminatory reason for its actions.

Downer did not even attempt to satisfy his burden under the third step of the *McDonnell Douglas* framework. Where an employer offers legitimate, non-discriminatory reasons for an adverse action, a plaintiff then must prove by a preponderance of the evidence that the reasons offered by the employer were pretextual. *Burdine*, 450 U.S. at 253. Yet Downer has not argued—let alone provided evidence to prove—that the County's justifications were pretextual. He thus fails at both the first and third steps of the *McDonnell Douglas* framework, either of which would be fatal on its own.

### B.  Hostile Work Environment

Downer's hostile work environment claims are similarly devoid of factual support. To prevail under both Title VII and Section 1981, a plaintiff must "show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011). Again here, Downer failed to produce

8

evidence to support his claim that the County's alleged adverse actions were connected to his race or national origin. Downer thus cannot satisfy the second prong of this framework.

## C.  Retaliation

Finally, though Downer alleges that the County retaliated against him for engaging in protected activity, he has not connected any of the alleged "retaliatory" actions to his protected activity. For instance, Downer asserts that after he submitted a complaint on February 24, 2021, he was retaliated against by having his "work truck . . . taken from him," on June 14, 2021. J.A. 21. The record, however, indicates that Downer's work truck was not "taken from him." J.A. 21. Most employees in his position were required to share vehicles. The only reason Downer previously was not required to do so was that other employees were afraid to ride with him. Downer's placement on administrative leave, which he also characterizes as unlawful retaliation, is similarly disconnected to any protected activity. Downer admits that he was placed on paid administrative leave immediately after he threatened his supervisor by pointing his finger at him and telling him "I will get you out of this office." *See* J.A. 550. Downer does not assert that this was protected activity, nor could he.

## IV.    Conclusion

Because Downer failed to produce evidence sufficient to allow a reasonable jury to rule in his favor, we affirm the district court's grant of summary judgment to the Prince George's County Board of Education.

*AFFIRMED*

9